## US DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

DONALD FREED,
    Plaintiff,

v.

MICHELLE THOMAS, sued in her official and individual capacities; and COUNTY OF GRATIOT,
    Defendants
_____/

Case No.: 17-cv-13519
Honorable Bernard A. Friedman
Magistrate Patricia Morris

**RESPONSE**

| | |
|---|---|
| OUTSIDE LEGAL COUNSEL PLC<br>PHILIP L. ELLISON (P74117)<br>Counsel for Plaintiff<br>PO Box 107<br>Hemlock, MI 48626<br>(989) 642-0055<br>pellison@olcplc.com | CUMMINS MCLOREY DAVIS & ACHO<br>ALLAN C. VANDER LAAN (P33893)<br>Attorneys for Defendants<br>2851 Charlevoix Dr, S.E., Ste 327<br>Grand Rapids, MI 49546<br>(616) 975-7470<br>avanderlaan@cmda-law.com |

**[AMENDED[1]] RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

NOW COMES Plaintiff DONALD FREED, by counsel, and opposes the motion to dismiss filed by Defendants pursuant to Fed.R.Civ.P. 12(b)(1) claiming a lack of subject matter jurisdiction in this Court. For the reasons outlined in the attached brief, the Court is requested to deny the improper motion and direct Defendants to file an answer forthwith.

---

[1] This amended response is filed to correct minor scrivener error(s) in the originally filed briefing.

(Sidebar: OUTSIDE LEGAL COUNSEL PLC  www.olcplc.com)

## CONCISE STATEMENT OF THE ISSUES PRESENTED

"The district courts shall have *original jurisdiction* of any civil action... [t]o redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States. 28 U.S.C. § 1343(a)(3). Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress... 42 U.S.C. § 1983. See *Coleman v District of Columbia*, 70 F.Supp.3d 58 (DDC 2014)

Does this Court lack subject matter jurisdiction over Plaintiff Donald Freed's *constitutional* challenge to the non-return of his equity *beyond* the amount of taxes and administrative expenses owed to and retained by Defendants?

Answer:   No; *Coleman v Dist. of Columbia*, 70 F.Supp.3d 58 (DDC 2014)

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

**CONTROLLING / APPROPRIATE AUTHORITY FOR RELIEF SOUGHT**

*Coleman v Dist. of Columbia*, 70 F.Supp.3d 58 (DDC 2014)
*Rafaeli, LLC v. Oakland County*, No. 330696, 207 W.L. 4803570 (Mich. Ct. App. Oct. 24, 2017)

## BRIEF IN OPPOSITION

## FACTS

Plaintiff Donald Freed is a resident of the County of Gratiot in the State of Michigan and owned Parcel No. 13-026-006-10 commonly known as 7706 Bliss Rd, Elwell, MI 48832 (hereinafter the "Freed Property"). **ECF No. 1, Compl, ¶¶1, 7.** The Freed Property was the home of Plaintiff Donald Freed which rests on approximately 35 acres of land. *Id.,* **¶8.** It was worth approximately $97,000.00 by the County's own records. *Id.,* **¶10.**

It is undisputed that Plaintiff Donald Freed then owed a mere $735.43 in past due taxes, together with administrative expenses, costs and interest to total $1,109.06. *Id.,* **¶11.** Defendant MICHELLE THOMAS sought and obtained a tax foreclosure judgment from the Michigan Circuit Court for the County of Gratiot seizing the entire property ownership interests of Plaintiff Donald Freed for the past due amount of $1,109.06 related to Freed Property. *Id.,* **¶15.** The County then sold the Freed Property at auction, for $42,000.00 to a third party. *Id.,* **¶16.** The past due $1,109.06 tax bill was paid from the proceeds. However, Defendant MICHELLE THOMAS and Defendant COUNTY OF GRATIOT refused to return the excess equity beyond the unsatisfied tax debt and administrative expenses, costs, and interest of $1,109.06 and have appropriated real property's equity worth

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

4

$97,000.00 for public use by Defendant COUNTY OF GRATIOT. Because the sale is completed and no further legal action is left under the State's taxing scheme, Plaintiff Donald Freed brought a two-count complaint in this Court. Critically, he did not challenge the validity or the amount of the tax owed. He is not seeking to have this Court recalculate, refigure, or re-determine the amount of this taxes. Instead, he asserts that Defendants MICHELLE THOMAS and COUNTY OF GRATIOT, acting under the color of law of the State of Michigan, subjected Plaintiff Donald Freed to the deprivation of rights, privileges, or immunities secured by the Constitution, namely both the Fifth (via the Fourteenth) Amendment as a taking and the Eighth Amendment as a violative excessive fine. This Court has "original" jurisdiction to hear any case in which seeks to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States. 28 U.S.C. § 1343(a)(3). The Defendants moved to dismiss this constitutional challenge on the grounds that this Court lacks jurisdiction to decide issues of constitutional law. This opposition now follows.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

5

**ARGUMENT**

Plaintiff Freed has brought this case at this time premised on two recent court decisions, one federal and one state: *Coleman v District of Columbia*, 70 F.Supp.3d 58 (2014) and *Rafaeli LLC v Oakland County*, No. 330696, 207 W.L. 4803570 (Mich. Ct. App. Oct. 24, 2017). Copies of both are attached hereto. These cases are addressed herein.

*TAX INJUNCTION ACT*

First, Defendants argue this Court lacks jurisdiction because the *Tax Injunction Act* applies. The TIA states:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law <u>where a plain, speedy and efficient remedy may be had in the courts of such State</u>.

28 U.S.C. § 1341. The statute has limited applicability to deprive federal courts of jurisdiction. See *Direct Mktg Ass'n v Brohl*, 135 S Ct 1124, 1130 (2015)(rejecting field preclusion argument and held TIA is limited to certain class of tax-related actions). While it is a legal "vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes," *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 522 (1981), it does not expressly bar *all* lawsuits that relates to tax collection, however. The TIA acts to only apply to "two closely related, state-revenue-protective objectives":

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

> (1) to eliminate disparities between taxpayers who could seek injunctive relief in federal court — usually out-of-state corporations asserting diversity jurisdiction — and taxpayers with recourse only to state courts, which generally required taxpayers to pay first and litigate later; and
>
> (2) to stop taxpayers, with the aid of a federal injunction, from withholding large sums, thereby disrupting state government finances.

*Hibbs v. Winn*, 542 U.S. 88, 104 (2004). *Hibbs* articulated the narrow scope of claims that are subject to the TIA's bar, holding that it does not bar claims that relate generally to "state tax administration"; rather, the relief sought must disrupt "the collection of revenue" by "operat[ing] to reduce the flow of state tax revenue." *Id.* at 105-106. Upon reviewing the TIA's history, the Supreme Court in *Hibbs* concluded that:

> Congress trained its attention on taxpayers who sought to avoid paying their tax bill by pursuing a challenge route other than the one specified by the taxing authority. <u>Nowhere does the legislative history announce a sweeping congressional direction to prevent federal-court interference with all aspects of state tax administration</u>.

*Id.* at 104-105 (quotation marks omitted). "In sum, this Court has interpreted and applied the [TIA] only in cases Congress wrote the [TIA] to address, i.e., cases in which state taxpayers seek federal-court orders enabling them to avoid *paying state <u>taxes</u>*." *Id.* at 107. The Sixth Circuit has followed the same. *BellSouth Telecomms. v. Farris*, 542 F.3d 499, 501 (6th Cir. 2008)(TIA bars only claims "in which state taxpayers seek federal-court orders enabling them to avoid *paying state taxes.*").

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

7

In simple terms, Plaintiff Donald Freed is not asking the Court to avoid paying taxes, or enter a court order nullifying his prior property tax obligation of $1,109.06, or enjoin the assessment, levy, or collection of any tax, but rather deal with the amounts seized in excess of or outside the tax bill of $1,109.06. The tax of $1,109.06 has already and fully been assessed, levied, and collected (see *Coleman* discussed below), and Plaintiff Freed is not seeking to enjoin, suspend, or restrain the same before it occurs or to invalidate the same. What Plaintiff now seeks is monetary damages and other relief on the failure to return the excessive equity funds *beyond* what were his past due taxes. The actions of Defendants beyond collection of the tax of $1,109.06 results in the illegal seizure of excessive property interests (i.e. equity) in excess of taxes that were assessed, levied, or collected, and the seizure of the same violates the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution to which this Court has jurisdiction, under 28 U.S.C. § 1343, to remedy. The TIA does not bar such a claim in this Court.

This Court is requested to follow and adopt as its own the analysis of District Judge Sullivan in *Coleman Through Bunn v Dist. of Columbia*, 70 F.Supp.3d 58 (DDC 2014) in applying these arguments—a near identical surplus equity case. *Coleman* is eerily identical to the circumstances in this

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

8

case. The state-actor defendants in *Coleman* tried to argue the same TIA theory as done in the current surplus equity case. Judge Sullivan rejected the state actors' argument:

> The District's first jurisdictional argument is that Counts One and Three of Mr. Coleman's Complaint — which seek damages for the loss of surplus equity and a declaratory judgment that the relevant provisions of the D.C. Code are unconstitutional — challenge the legality of the District of Columbia's system for collecting property taxes in violation of the Tax Injunction Act, 28 U.S.C. § 1341, and the related principle of comity... Mr. Coleman claims that Counts One and Three do not challenge the District's collection of property taxes at all, but instead are addressed at the separate taking of a homeowner's surplus equity.
>
> ***
>
> Mr. Coleman does not seek a court order nullifying his property tax obligation.... Accordingly, if Mr. Coleman won this lawsuit, no "tax" would be removed from the District's coffers. For that reason, the Tax Injunction Act does not bar his claims.

*Coleman, supra*, at 66-67, 68. Plaintiff Freed is just like the plaintiff in *Coleman* and is not seeking to challenge collection of his actual tax owed but rather the separate taking of a homeowner's (i.e. his) surplus equity. Like Mr. Coleman, if Plaintiff Freed won this lawsuit, no "tax" would be removed from the County's coffers—it undisputedly keeps the $1,109.06. Also like the plaintiff in *Coleman*, Plaintiff Freed "does not challenge the [government's] right to collect the tax owed; the amount of the tax, interest, expenses or penalties owed; or the right of the [government's] taxing authorities to foreclose on his property to recover that debt;' "[a]ll he challenges is 'the taking of property that was indisputably not owed for taxes

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

9

... [i.e.] the amount in excess of the tax owed." *Id.*, at 69. Because of such, *Coleman* correctly concludes that this case is outside the narrow applicability of the TIA. Again, the TIA does not bar claims that relate only generally to state tax administration. *Hibbs, supra*, at 105-106. Courts still have power to correct certain constitutional wrongs. This Court is requested to follow the rationale in *Coleman* and find that the TIA (or as discussed below, comity) does not bar this Court's jurisdiction.

### *The Plain, Speedy, Efficient Remedy Exception*

To the extent this Court would reject the well-reasoned holding of *Coleman*, Plaintiff Freed asserts that the TIA still does not apply for an alternate reason. While spoken in broad terms, the TIA only applies to bar federal jurisdiction for state tax cases "where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. If there is no plain, speedy and efficient remedy, the TIA does not act as a bar. See *California v Grace Brethren Church*, 457 U.S. 393, 411 (1982). However, Defendants confuse the concept of available *remedy* with available *claim*. Recently the Sixth Circuit explained that "only when the states do not provide a 'plain, adequate, and complete" *remedy* [not claim] in their own courts should the federal courts be able to exercise jurisdiction despite the principles of comity." *Wayside Church v Van Buren County*, 847 F. 3d 812,

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

822 (6th Cir. 2017)(citing *Chippewa Trading Co. v. Cox*, 365 F.3d 538, 641 (6th Cir. 2004 and *Fair Assessment in Real Estate Ass'n v McNary,* 454 U.S. 100, 116 (1981)).[2]

Defendants fail to point any existing 'plain, adequate, and complete" remedy following the *Rafaeli* decision. First, Defendants did not explain nor offer any statutory or administrative path or process that Plaintiff Freed could take or could have taken under state law; this is because there is no statutory or administrative process to obtain a refund for the excess equity taken beyond the amount of the due tax under Michigan law. Second, there is now no longer a judicial claim that can be filed to seek return of the amount as a taking following the *Rafaeli* decision. A state court takings case is now futile. While true that Michigan state courts will permit, generally, constitutional challenges, Michigan law recently expressed it will not recognize any remedy for these types of takings involving excess equity, as *Rafaeli* so now directly holds. In *Rafaeli*, another victim taxpayer made the same argument being advanced by Plaintiff Freed, i.e. that the Michigan tax statute is unconstitutional because it mandates that governmental entities retain proceeds beyond those required to satisfy delinquent tax bills. **ECF No. 1-4,**

---

[2] *Wayside Church* (issued Feb 10, 2017) was decided before the Michigan courts rejected the takings remedy via *Rafaeli* (issued Oct 24, 2017).

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

**Compl, Ex D, p. 5.** The Michigan courts flatly rejected this constitutional challenge and refused to provide a remedy, and instead held that treasurers and counties <u>*can*</u> retain the excess equity without constitutional problems. Thusly—and in addition to the non-existence of any administrative refund mechanism—Michigan law does not recognize any such judicial remedy in this instance and therefore Defendants cannot, any longer, argue that a plain, speedy and efficient remedy exists under Michigan state law or through her courts. Following *Rafaeli*, the state courts' doors to the courthouse are closed to such claims to as being advanced in this case.[3] As such, this Court is now free to independently review the constitutionality of seizing excess equity due to the absence of a plain, speedy and efficient remedy in Michigan's courts.[4,5]

---

[3] *Wayside Church* was decided before *Rafaeli* and the Sixth Circuit did not have the pronouncement of Michigan's judiciary in *Rafaeli* as part of its analysis under the TIA.

[4] As such, Plaintiff's allegations in his complaint are correct: in this instance, no state court inverse condemnation or taking procedure is available by operation of Michigan case law. Why? *Rafaeli* bars any such remedy in Michigan courts. And this Court is called upon to correct the grave constitutional error of Michigan's courts with a federal remedy.

[5] This is perhaps why the Defendants want to be in state court; state courts are viewed (and rightfully so after *Rafaeli*) as taking all possible steps—even unconstitutional ones—to protect any incoming dollars that fund and run courts in an era of tight governmental budgets.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

**RIPENESS**

Next, Defendants argue that this case is not ripe under the *Williamson County* doctrine. First, the *Williamson County* doctrine only applies to <u>takings</u> claims, not excessive fines claims under the Eighth Amendment. See *Williamson County Regional Planning Comm'n v Hamilton Bank of Johnson City*, 473 U.S. 172 (1985). In blunt terms, Plaintiff's non-takings claims, like the Eighth Amendment excessive fines claim, are not subject to takings ripeness rules under the *Williamson County* doctrine. *Id.*

However, Defendants did not provide the complete picture of the ripeness test under *Williamson County*. First, *Williamson County*'s state court exhaustion requirement is a prudential principle, and is not jurisdictional; federal courts can decline to apply it as appropriate. *Sansotta v. Town of Nags Head*, 724 F.3d 533, 545 (4th Cir. 2013); see also *Wayside Church, supra*, at 818 ("the *Williamson County* test is not strictly jurisdictional but only prudential, and need not be followed when its application would not accord with sound process."). In this case, it is unnecessary, inefficient, and unsound to require Plaintiff Freed to seek a state court compensation judgment that will not crystalize his claim any further or will provide any state level remedy especially in light of *Rafaeli*. When state court decisions already reject or pre-reject compensation or takings-based relief in similar

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

circumstances, the case is already ripe for federal decision in federal courts. *Naegele Outdoor Advertising, Inc. v. City of Durham*, 803 F.Supp. 1068 (M.D.N.C. 1992), *aff'd,* 19 F.3d 11 (4th Cir.), *cert. denied*, 513 U.S. 928 (1994); see also *Coinston Corp. v Village of Hoffman Estates*, 844 F.2d 461, 463 (7th Cir. 1988)(a takings suit is ripe in federal court if it is apparent "the state does not intend to pay compensation."). *Rafaeli* easily proves the State of Michigan and her courts do not intend to pay just compensation on takings of surplus equity. The Court should hold the entire case fit for review because "a 'Case' or 'Controversy' exists once the government has taken private property without paying for it [and] *whether an alternative remedy exists does not affect the jurisdiction of the federal court.*" *Horne v. Dep't of Agriculture*, 133 S. Ct. 2053, 2062 fn.6 (2013)(emphasis added). There has been a completed seizure and completed finalized sale of Plaintiff Freed's property (see **ECF No. 1-3, Ex C**) and thus ripeness is not an issue because no further events need to occur. The exploitation has been done (and enjoyed in full) by Defendants; the question is whether it was legal.

Second, *Williamson County* does not act as a bar at all times; a plaintiff is exempted from the prudential exhaustion requirement if he demonstrates that "the inverse condemnation procedure is unavailable or inadequate." *Daniels v. Area Plan Comm'n of Allen County*, 306 F.3d 445, 456 (7th Cir.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

2002)(citing *Williamson County*, 473 U.S. at 197); see also *Washington Legal Found. v. Legal Found. of Washington*, 271 F.3d 835, 852 (2001) (discussing same).

Under Michigan law, per *Rafaeli*, a state inverse condemnation claim is futile because Michigan does not recognize any remedy on the taking of excess equity—it simply reclassifies it as a too-bad-so-sad forfeiture. And as stated in Defendants' brief—yes, Michigan courts recognize inverse condemnation *as a general **claim***—but it no longer will recognize any state ***remedy*** *for a takings claim regarding stolen or taken excess equity*—when governmental entities retain the proceeds beyond those required to satisfy delinquent tax bills. Thusly, a Michigan inverse condemnation procedure is unavailable or inadequate as applied to these circumstances due to *Rafaeli*. As such, the case is ripe for this Court to adjudicate the matter now. This case is not one where Plaintiff may resort to an administrative or legal proceeding under state law. Those either do not exist (within the statute itself) or the outcome is foreclosed (i.e. unavailable) because the courthouse doors are closed on the takings argument due to *Rafaeli*. Due to unavailable or inadequate processes for state takings proceedings per *Rafaeli*, *Williamson County* does not prudentially bar this case from this Court's jurisdiction. After *Rafaeli*, there is no longer any reasonable, certain, and

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

15

adequate provision for obtaining compensation under Michigan law. See *Kruse v Village of Chargrin Falls*, 74 F.3d 694, 698 (6th Cir. 1996). The Sixth Circuit agrees: a takings claim is ripe where "a review of [Michigan] law has revealed no reasonable, certain, and adequate provision for obtaining just compensation that was available ... at the time of the alleged takings in this case." *Arnett v. Myers*, 281 F.3d 552, 564 (6th Cir. 2002). In face of now administrative procedures and no longer an available takings case per *Rafaeli*, no reasonable, certain, and adequate provision exists under Michigan law and thus *Williamson County* is no bar. As such, there is no ripeness problem under *Williamson County.*

## **COMITY**

Lastly, Defendants argue the doctrine of comity serves as baseline beyond the TIA and also bars jurisdiction in this Court. In other words, comity "stands as its own bottom" and is "substantially broader" than the bar imposed by the TIA. *Chippewa Trading, supra*, at 541. However, the Supreme Court has recently tempered comity's reach by concluding that "[u]nlike the TIA, the comity doctrine is nonjurisdictional." *Direct Mktg, supra*, at 1134. And moreover, like the TIA jurisprudence, federal court should "normally abstain from hearing the action <u>as long as</u> there is a 'plain,

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

16

adequate, and complete' remedy available to the plaintiff in state court—the same standard under the TIA. See *Fair Assessment, supra*, at 116 fn.8.

For the same reasons outlined above, comity for tax cases does not come in play in this case because Plaintiff Freed is not asserting a tax case, i.e. he does not seek a court order nullifying his property tax obligation. He also does not challenge the right to collect the tax owed; the amount of the tax, interest, expenses or penalties owed; or the right of the government's taxing authorities to foreclose on his property to recover that debt; all he challenges is the taking of property that was indisputably not owed for taxes, i.e. the amount in excess of the tax owed. Under *Coleman* and the tax comity jurisprudence, this case is not about state taxes, but the theft of property in excess of and outside of the tax owed. As such, the comity doctrine does not apply.

But even if the Court would see it otherwise, the comity doctrine does not apply when there lacks a plain, adequate, and complete remedy in state courts. Again, there is no administrative process Defendants can point to obtain compensation or a remedy, and the courthouse doors are closed on the takings argument due to *Rafaeli*. As such, comity—as a prudential concept—does not deprive this Court of jurisdiction.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

## CONCLUSION

Plaintiff has brought this case to this Court expressly because of the Michigan Court of Appeals' decision in *Rafaeli* no longer allows federal courts to stick their head in the sand and direct litigants to state court for a remedy. Why? We now know it results in the lack of a plain, adequate, and complete remedy available to the plaintiff in Michigan's state courts.[6] For these reasons and for all the reasons outlined in *Coleman* taking this case outside of tax, this Court is requested to retain jurisdiction over this case and deny the motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1). If, however, the Court believes that now after *Rafaeli* that Michigan *can* somehow still provide a plain, adequate, and complete remedy for a taking for excess equity and ignore the quality analysis of *Coleman*, then this Court seemingly would need to dismiss this case, without prejudice[7], to permit Plaintiff to file this matter in state court.

---

[6] The only way that Defendants can move forward in denying this Court jurisdiction is to convince this Court that Michigan courts still provides a remedy post-*Rafaeli*—a proposition that is clearly absurd. They will not convince this Court that *Rafaeli* does not say what is plainly expressed: no remedy for theft of excess surplus under state courts processes.

[7] If the court lacks subject matter jurisdiction, it should dismiss *without* prejudice. *In re Great Lakes Dredge & Dock Co., LLC*, 624 F.3d 201, 209 (5th Cir. 2010); see also *Mitan v. Int'l Fidelity Ins. Co.*, 23 Fed. Appx. 292, 298 (6th Cir. 2001).

Date: November 28, 2017        RESPECTFULLY SUBMITTED:

<u>/s/ Philip L. Ellison</u>
OUTSIDE LEGAL COUNSEL PLC
BY PHILIP L. ELLISON (P74117)
Counsel for Plaintiff
PO Box 107 · Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

19

## CERTIFICATE OF SERVICE

I hereby certify that on date stated below, I filed the foregoing document with the ECF/CM system which will serve an email copy of the same to all counsel of record (at their email address of record) on the date stated below.

Date: November 28, 2017

RESPECTFULLY SUBMITTED:

/s/ Philip L. Ellison
OUTSIDE LEGAL COUNSEL PLC
BY PHILIP L. ELLISON (P74117)
Counsel for Plaintiff
PO Box 107 · Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com