UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD FREED,

    Plaintiff,                                 Civil Action No. 17-CV-13519

vs.                                          HON. BERNARD A. FRIEDMAN

MICHELLE THOMAS, et al.,

    Defendants.
_____/

## **OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS**

This matter is before the Court on defendants' motion to dismiss for lack of subject-matter jurisdiction [docket entry 6]. This motion is fully briefed. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this motion without a hearing.

The following facts are summarized from the complaint and briefing: For several decades, plaintiff owned and lived on a thirty-five acre parcel in Gratiot County, Michigan. This land is worth approximately $100,000. From 2014 to 2015, plaintiff failed to pay almost $2,000 in property taxes, costs, and interest. In June 2016, the Gratiot County treasurer, defendant Michelle Thomas, filed a petition in Gratiot County Circuit Court under the General Property Tax Act ("GPTA"), Mich. Comp. Laws § 211.78, to foreclose on plaintiff's property. In February 2017, the circuit court granted the petition and foreclosure, and title transferred to Gratiot County. In August 2017, defendants sold plaintiff's land for $42,000 to cover his $2,000 tax bill and kept the balance ("surplus equity"). In October 2017, plaintiff filed this complaint, asserting violations of the Fifth Amendment's takings clause and Eighth Amendment's excessive-fines clause.

In November 2017, defendants filed the instant motion to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction. Defendants raise three jurisdictional

challenges to plaintiff's Fifth Amendment eminent domain claim: Ripeness, The Tax Anti-Injunction Act, and Comity.[1]

*Ripeness.* The Court has jurisdiction over eminent domain claims only if they are ripe. *Bigelow v. Michigan Dep't of Nat. Res.*, 970 F.2d 154, 157 (6th Cir. 1992). For a claim challenging a state action to be ripe, plaintiff must show both that the state government decision was final and that there are no available state court remedies. *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186, 194 (1985). Here, plaintiff adequately shows both.

A state government decision is final when "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Id.* at 186. Here, Gratiot County implements the GPTA, has already sold plaintiff's property to cover his back taxes, and refuses to remit the surplus equity. This appears to be a final decision under *Williamson*.

In addition to showing finality, a plaintiff must first "seek compensation through the procedures the State has provided for doing so." *Williamson*, 473 U.S. at 194. This analysis looks to potential "remedies under state substantive law." 13B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3532.1 n.43 (3d ed. 2014). But critically, plaintiff must adhere to this requirement only if the potential remedies are "reasonable, certain, and adequate." *Williamson*, 473 U.S. at 194. Merriam-Webster's Dictionary 367 (3d ed. 1986) defines the word certain as "fixed," "settled," or "sure."

Here, defendants believe that inverse condemnation is a sufficient state law remedy. Plaintiff conversely argues that the doctrine of inverse condemnation does not apply here, or, at

---

[1] Defendants do not mount any substantive challenge to plaintiff's Eighth Amendment claim separate from the jurisdictional arguments. Consequently, the Court will treat them together.

the very least, it is not certain that it does. The Court agrees with plaintiff. Were he to file this suit in state court, he would face significant substantive and jurisdictional problems.

Turning first to the substantive problems: Michigan has long recognized the right of inverse condemnation. *Hart v. City of Detroit*, 331 N.W.2d 438, 441 (Mich. 1982). As a general rule, though, inverse condemnation claims recover property that the government has taken under its taxing power, not its eminent domain power. *See Merkur Steel Supply, Inc. v. City of Detroit*, 680 N.W.2d 485, 494 (Mich. Ct. App. 2004) ("An inverse condemnation suit is one instituted by a private property owner whose property, while not formally taken for public use, has been damaged by a public improvement undertaking or other public activity."). Consequently, Michigan courts rarely countenance inverse condemnation claims to remedy an abuse of the taxing power, which is the kind of claim at issue here. And when they do, it is only in the context of general taxing power excesses, not of GPTA foreclosure sales. *Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 823 (6th Cir. 2017) (Kethledge, J., dissenting) (stating that no Michigan court has "determined, as a matter of state law, whether a local government's appropriation of property pursuant to the taxing power generally, or to the [GPTA] in particular, is a taking to the extent the government takes property worth more than the amount of taxes owed").

The Michigan Court of Appeals further solidified these points in *Rafaeli, LLC v. Oakland Cty.*, No. 330696, 2017 WL 4803570 (Mich. Ct. App. Oct. 24, 2017) [hereinafter *Rafaeli I*]. Just like here, the plaintiff in *Rafaeli I* brought an eminent domain challenge to a county's taking of the tax foreclosure sale's surplus equity. 2017 WL 4803570, at *1–2. In denying his claim, the court stated:

> The government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain. Defendants obtained the property by way of a statutory scheme that

> did not violate due process. The constitution does not require them to compensate plaintiffs for the lawfully-obtained property.

*Id.* at *4 (internal quotation marks and citations omitted). In other words, because the county took the plaintiff's property via the GPTA and did not violate due process, the plaintiff had no claim under either eminent domain or inverse condemnation.

Here, like *Rafaeli I*, the statutory scheme defendants used is the GPTA and there is no serious due process claim. If the Michigan Court of Appeals would not recognize the *Rafaeli I* plaintiff's claim, is it really settled or sure that Michigan would recognize the instant plaintiff's identical claim? The Court believes not. *Rafaeli I* casts serious doubt on the notion that plaintiff could use inverse condemnation to obtain the surplus equity at issue here.

The Court notes that there is pre-*Rafaeli I* case law in this circuit that runs counter to this conclusion. *Wayside* and *Rafaeli, LLC v. Wayne Cty.*, No. 14-13958, 2015 WL 3522546, at *1 (E.D. Mich. June 4, 2015) [hereinafter *Rafaeli*] both held in very similar cases that the Court did not have jurisdiction over this kind of claim. The Court believes these cases are distinguishable because they both hinged on the assumption that Michigan courts provide a plaintiff with plain, speedy, efficient, reasonable, certain, and adequate remedies at law. In the Court's view, *Rafaeli I* put that idea to rest.

Indeed, the Court adds its voice to the growing chorus of judges concerned about these kinds of claims, which appear in federal court because there is no adequate remedy at state law. *Rafaeli I*, 2017 WL 4803570, at *6 (Shaprio, J., concurring) (recognizing "that plaintiffs' claims call out for relief" notwithstanding the court's decision to deny it; quoting at length Judge Berg's concern in *Rafaeli* that this was a "manifest injustice" and an "abuse of power"; and citing Judge Kethledge's *Wayside* dissent where he called this county practice a "gross injustice—both equitably, and from the standpoint of the interests protected by takings law").

4

Defendants insist that Michigan courts do recognize that inverse condemnation principles "apply to land subject to a tax foreclosure." Defs.' Mot. p. 4. In support, they cite *Ligon v. City of Detroit*, 739 N.W.2d 900, 905 (Mich. Ct. App. 2007), and *Hart*, 331 N.W.2d at 438. But neither of these cases applies here. In *Ligon*, the plaintiff was not actually part of the tax foreclosure proceedings, so his property rights were never extinguished. *Ligon*, 739 N.W.2d at 906. Consequently, when the government demolished his building in error he still had full ownership interest in the building, and the demolition was clearly a taking. *Id.* But *Rafaeli I* held that once a tax foreclosure proceeding that complies with due process concludes, a plaintiff has no rights in the foreclosed property, notwithstanding any claim to surplus equity. Thus, plaintiff's claim is entirely different than the claim in *Ligon*. And in *Hart*, the Michigan Supreme Court discussed inverse condemnation only in the context of the statute of limitations. Neither opinion alludes to the GPTA or anything like surplus equity. In sum, in light of *Rafaeli I*, if plaintiff were to bring his claim in a Michigan court, he would face significant substantive problems.

Turning second to the jurisdictional problems. Even if plaintiff could be certain that he has a recognized cause of action, it is not clear in which Michigan court he could pursue his claim against defendant Gratiot County. On the one hand, the Court of Claims seems appropriate. Under Mich. Comp. Laws § 600.6419, the Court of Claims has "exclusive . . . jurisdiction: (a) To hear and determine any claim or demand, statutory or constitutional, . . . or any demand for monetary, equitable, or declaratory relief . . . against the state." Some Michigan Court of Appeals cases treat counties as instrumentalities of the state and, therefore, hold that the Court of Claims has jurisdiction over claims against counties. *See, e.g.*, *Wayne Cty. Bd. of Comm'rs v. Wayne Cty. Airport Auth.*, 658 N.W.2d 804, 828 (Mich. Ct. App. 2002) (holding that counties are "political subdivisions and instrumentalities of the state"); *Pomann, Callanan & Sofen, P.C. v.*

5

*Wayne Cty. Dep't of Soc. Servs.*, 419 N.W.2d 787, 789 (Mich. Ct. App. 1988) (stating that § 600.6419's "exclusive jurisdiction encompasses all claims against the state and its instrumentalities," and holding that Wayne County was such an instrumentality). Further, the Michigan Court of Appeals has gone so far as to say that "[t]he Court of Claims is the proper forum in which to seek redress where a plaintiff alleges an already accomplished inverse condemnation." *Lim v. Mich. Dep't of Transp.*, 423 N.W.2d 343, 345 (Mich. Ct. App. 1988).

Other authority suggests that the Court of Claims is not the proper forum. Mich. Comp. Laws § 600.6440 states that the Court of Claims does not have jurisdiction over a plaintiff who has an "adequate remedy upon his claim in the federal courts." This expresses a preference that federal claims be litigated in federal court. As plaintiff has filed a Fifth Amendment eminent domain claim under 42 U.S.C. § 1983 to vindicate his federal rights, and the Court adjudicates such claims, it appears that he has a remedy in the federal courts, which deprives the Court of Claims of jurisdiction. *Wayside* dicta, too, suggests that the proper forum for an inverse condemnation claim is the Circuit Court. 847 F.3d at 821 (examining *Gordon v. Sadasivan*, 373 N.W.2d 258 (Mich. Ct. App. 1985) (per curiam)). And puzzlingly, the Michigan Court of Appeals has held that counties "are never within the jurisdiction of the Court of Claims." *Doan v. Kellogg Cmty. Coll.*, 263 N.W.2d 357, 359 (Mich. Ct. App. 1977).

Perhaps plaintiff would guess the right Michigan court in which to file his claim, and perhaps that court would hear it. But given *Rafaeli I* and the jurisdictional quandary outlined above, that result is by no means certain. Because plaintiff has "establish[ed] the inadequacy of the procedure in these circumstances"—i.e., its uncertainty—his eminent domain claim is ripe. *Macene v. MJW, Inc.*, 951 F.2d 700, 704 (6th Cir. 1991).

*The Tax Anti-Injunction Act.* The Tax Anti-Injunction Act, 28 U.S.C. § 1341, states: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." In *California v. Grace Brethren Church*, 457 U.S. 393, 411 (1982), the Court held that generally, § 1341 "prohibits declaratory" and "injunctive relief." Accordingly, a district court has jurisdiction to declare state "tax provision unconstitutional or to issue its injunction against state authorities" only when a plaintiff "had no plain, speedy and efficient remedy in the state courts." *Id.* A remedy is plain, speedy, and efficient if the plaintiff is given a "full hearing and judicial determination of the controversy." *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 514 (1981). Put another way, the Court may enjoin state tax collection only "where it may be necessary to protect the rights of the citizen whose property is taxed, and he has no adequate remedy by the ordinary processes of the law." *Grace Brethren*, 457 U.S. at 412 (quotation marks omitted).

In considering what precisely plaintiff is asking the Court to do, the Court must look to his prayers for relief. Prayers for relief (a) and (b) request that the Court enjoin enforcement of the GPTA against him and declare it unconstitutional as applied to him. Prayers for relief (c) and (d) request that the Court enjoin defendants' "procedures" of keeping the surplus equity as that violates the Fifth, Eighth, and Fourteenth amendments. Prayers for relief (e)–(g) request nominal and punitive damages, costs and attorney fees, and other equitable relief.

The Court does not believe prayers (c) and (d) implicate § 1341 because granting them would not require the Court to enjoin, suspend, or restrain either tax collection or enforcement of the GPTA. Plaintiff admits that at the time of the foreclosure sale, he owed defendants back taxes, which the sale of his property paid for. Prayers (c) and (d) do *not* request that the Court order defendants to remit that money they used to satisfy plaintiff's tax debt. Rather,

7

they request that the Court order defendants to remit the surplus equity. In other words, prayers (c) and (d) do not implicate tax collection or foreclosure sales, but merely whether municipalities may retain a windfall from a tax foreclosure sale. The D.C. District Court summarized this distinction succinctly in *Coleman through Bunn v. District of Columbia*, 70 F. Supp. 3d 58, 68 (D.D.C. 2014):

> Mr. Coleman does not seek a court order nullifying his property tax obligation. Indeed, the District conceded at oral argument that a ruling in Mr. Coleman's favor would not allow him to avoid paying any tax. . . . Mr. Coleman concedes that those amounts were due; he seeks only the surplus equity that remains after those amounts are paid. Accordingly, if Mr. Coleman won this lawsuit, no 'tax' would be removed from the District's coffers. For that reason, the Tax Injunction Act does not bar his claims.

*See also Hibbs v. Winn*, 542 U.S. 88, 90–91 (2004) ("This Court has interpreted and applied the TIA only in cases Congress wrote the statute to address, i.e., cases in which state taxpayers seek federal court orders enabling them to avoid paying state taxes.").

The text of the GPTA supports this conclusion. Within the context of tax foreclosures, the GPTA defines "taxes" as the initial tax bill and any additional "interest, penalties, and fees imposed before the taxes become delinquent and unpaid special assessments or other assessments that are due and payable up to and including the date of the foreclosure hearing." Mich. Comp. Laws § 211.78a. Under this definition, the surplus equity at issue here is not "taxes." *See City of Detroit v. Kelly*, No. 280974, 2009 WL 3276348 (Mich. Ct. App. Oct. 13, 2009) (interpreting § 211.78a consistent with this opinion). Therefore, § 1341 does not bar the Court from granting prayers (c) and (d).

Prayers (a) and (b) fall squarely within § 1341 because they explicitly request that the Court hold the GPTA unconstitutional and enjoin its enforcement. Under *Grace Brethren*, however, § 1341 does not bar jurisdiction if there is no other plain, speedy, and efficient state

remedy for plaintiff. Therefore, under *Rosewell*, the question becomes whether Michigan courts would give plaintiff a full hearing and judicially determine the instant controversy. For the reasons stated above, it appears that they would not. Consequently, § 1341 does not prevent the Court from adjudicating plaintiff's claims.

*Principles of Comity.* For all of the reasons § 1341 does not bar jurisdiction here, neither do the principles of comity. In *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 107, 116 (1981), the Court held that comity normally bars taxpayers "from asserting § 1983 actions against the validity of state tax systems in federal courts." The Court may not grant "injunctive and declaratory relief in state tax cases," or "damages relief." *Id.* The Court later clarified, however, that under *Fair Assessment* and its progeny, "state tax administration" matters need not be kept "entirely free from lower federal-court 'interference.' Like *Grace Brethren Church*, all of them fall within § 1341's undisputed compass: All involved plaintiffs who mounted federal litigation to avoid paying state taxes (or to gain a refund of such taxes)." *Hibbs*, 542 U.S. at 90–91. In other words, principles of comity are largely guided by § 1341's principles and do not apply to plaintiffs who are not challenging a state tax system. Thus, as the gist of this action is not a challenge of Michigan's tax system—and to the extent that it is such a challenge, there is no adequate state law remedy—the principles of comity do not bar the Court's jurisdiction.

In the Court's view, the case comes down to this: Gratiot County "took property worth [$100,000] to satisfy a [$2,000] debt, and then refused to refund any of the difference. In some legal precincts that sort of behavior is called theft. But under the [GPTA], apparently, that behavior is called tax collection." *Wayside*, 847 F.3d at 823 (Kethledge, J., dissenting).

Accordingly,

IT IS ORDERED that defendants' motion to dismiss is denied.

Dated: April 26, 2018          s/Bernard A. Friedman
Detroit, Michigan              BERNARD A. FRIEDMAN
                                         SENIOR UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 26, 2018.

                                           s/Johnetta M. Curry-Williams
                                           Case Manager