# US DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

DONALD FREED,
    Plaintiff,

    v.

MICHELLE THOMAS, sued in her
official and individual capacities;
and COUNTY OF GRATIOT,
    Defendants

_____/

Case No.: 17-cv-13519
Honorable Bernard A. Friedman
Magistrate Patricia Morris

**MOTION**

OUTSIDE LEGAL COUNSEL PLC
PHILIP L. ELLISON (P74117)
Counsel for Plaintiff
PO Box 107
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

CUMMINS MCCLOREY DAVIS &
ACHO
ALLAN C. VANDER LAAN (P33893)
Attorneys for Defendants
2851 Charlevoix Dr, S.E., Ste 327
Grand Rapids, MI 49546
(616) 975-7470
avanderlaan@cmda-law.com

---

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

NOW COMES Plaintiff DONALD FREED, by counsel, and moves for summary judgment pursuant to Fed. R. Civ. P. 56 as to the takings claim (Count I) and in the alternative (only if Count I is denied) as to the excessive fines claim (Count II) because the United States Supreme Court has issued a writ of certiorari in the case of *Timbs v. Indiana* (Case No. 17-1091) questioning whether the Eight Amendment's Excessive Fines Clause is incorporated against the States under the Fourteenth Amendment. Plaintiff

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

1

Freed reserves the issue of punitive damages, certain injunctive relief, as well as attorney fees and costs pursuant to 42 U.S.C. § 1988 for further proceedings. Concurrence was pursued via email for the relief sought and the concurrence was not provided, see L.R. 7.1(a).

Date: July 15, 2018                    RESPECTFULLY SUBMITTED:

/s/ Philip L. Ellison
**OUTSIDE LEGAL COUNSEL PLC**
**PHILIP L. ELLISON (P74117)**
Counsel for Plaintiffs

## US DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

DONALD FREED,
    Plaintiff,

    v.

MICHELLE THOMAS, sued in her
official and individual capacities;
and COUNTY OF GRATIOT,
    Defendants

_____/

Case No.: 17-cv-13519
Honorable Bernard A. Friedman
Magistrate Patricia Morris

**BRIEF**

OUTSIDE LEGAL COUNSEL PLC
PHILIP L. ELLISON (P74117)
Counsel for Plaintiff
PO Box 107
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

CUMMINS MCCLOREY DAVIS &
ACHO
ALLAN C. VANDER LAAN (P33893)
Attorneys for Defendants
2851 Charlevoix Dr, S.E., Ste 327
Grand Rapids, MI 49546
(616) 975-7470
avanderlaan@cmda-law.com

---

## PLAINTIFF'S BRIEF IN SUPPORT
## OF MOTION FOR SUMMARY JUDGMENT

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

## QUESTIONS PRESENTED

I.      Did defendants violate the Takings Clause?

        Plaintiff answers:       Yes

II.     In the alternative, did defendants impose an unconstitutionally excessive in-kind fine in violation of the Excessive Fines Clause?

        Plaintiff answers:       Yes

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

## MOST APPLICABLE AUTHORITY

### <u>Taking Clause</u>

U.S. Const. amend. V

*Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155 (1980)

*Brown v. Legal Foundation of Wash.*, 538 U.S. 216 (2003)

*Almota Farmers Elevator & Whse. Co. v. United States*,
409 U.S. 470 (1973)

### <u>Excessive Fines Clause</u>

U.S. Const. amend. VIII

*Austin v. United States*, 509 U.S. 602 (1993)

*United States v. Bajakajian*, 524 U.S. 321 (1998)

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

## INTRODUCTION

This Court aptly explained the core of this case—Gratiot County and its treasurer "took" property worth $100,000 to satisfy a $2,000 debt, and then refused to refund any of the difference. In some legal precincts that sort of behavior is called theft. But under Michigan law, apparently, that behavior is called tax collection. **Order, ECF No. 25, p. 9.** The facts are simple and essentially undisputed; the question is one of law. Can this form of "tax collection" beyond the taxes and monetary-penalties owed be deemed lawful in light of constitutional protections from uncompensated takings and excessive fines under the Fifth and Eighth Amendments? The answer is clearly no. Summary judgment is appropriate and requested.

## FACTS

For several decades, plaintiff Donald Freed owned and lived on a thirty-five-acre parcel in Gratiot County, Michigan known as Parcel No. 13-026-006-10, or as it is commonly known—7706 Bliss Rd, Elwell, Michigan. The market value (or true cash value) of the property was $98,800.00. **Exhibit B.**[1] It is undisputed that plaintiff Freed then owed a mere $735.43 in

---

[1] Michigan's property tax assessors determine the market value of a piece of property. SEV stands for "state equalized value" or "one half (1/2) of your property's true cash value." See < https://www.michigan.gov/taxtrib/0,4677,7-187-25923-126336--,00.html > *last accessed* June 7, 2018. A property's "true cash value" is "the fair market value or the usual selling price of property." *Id.* The amount of taxes imposed is based on

past due taxes, together with administrative expenses, various costs, and interest, totaling $1,109.06. **Exhibit A, p. 6; see also Exhibit G, pp. 15-24** (explaining the calculations outlined in Exhibits H and I).[2] Plaintiff Freed does not dispute he was in arrears this total amount of $1,109.06, but he did not fully understand this at the time because of his inability to sufficiently read.[3]

In June 2016, the Gratiot County treasurer, defendant Michelle Thomas, filed an *in rem* petition in Circuit Court for Gratiot County under the *General Property Tax Act* ("GPTA"), MCL 211.78 et seq, to foreclose on plaintiff Freed's property. **Exhibit G, p. 49.** In February 2017, the circuit court granted defendant Thomas' *in rem* petition for foreclosure. Title (and all the equity) in said property was transferred to defendant Gratiot County and its treasurer. **Exhibit K; Exhibits A; see also Exhibit B.** Prior to the sale at auction, Freed retained the undersigned counsel who called the Treasurer's office to correct Freed's payment issues. The County Treasurer's Office refused to help stating that it was going to use Freed's property to make a "profit." See **Exhibit F** (highlighted).

---

adjustments to these numbers to reach the "taxable value." See < https://www.michigan.gov/taxtrib/0,4677,7-187-25923-126336--,00.html> *last accessed* June 7, 2018.*Id.*

[2] The amount of tax calculated in **Exhibit A** (page 6) is different from later exhibits due to ongoing interest being calculated by the computer program. See **Exhibit G, pp. 51-52**.

[3] As previously noted, plaintiff Freed is not seeking to have the Court recalculate, refigure, or re-determine the amount of this past due tax and monetary penalty of $1,109.06.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

In August 2017, defendants sold plaintiff Freed's real property parcel worth $98,800.00 for a mere and obtained $42,000.00 to cover the minimal $1,109.06 tax bill, and then kept the profits, consisting of the remaining balance of the sale proceeds after the tax of $1,109.06 was paid ("sale surplus"). **Exhibit C.** Defendant Thomas, as treasurer, initiated and signed all the relevant paperwork and took all the relevant actions. See e.g. **Exhibit C; Exhibit K; see Exhibit G, p. 11, 49.** She never initiated eminent domain proceedings for the equity or monies above $1,109.06. **Exhibit G, p. 44.**

Seizing and selling property far in excess of the past due tax debt is a regular custom and practice of defendant Gratiot County. **Exhibit G, p. 34, 35; Exhibit F, p. 2.** Regarding past due tax debts with the right of foreclosure ripening in 2016 and 2017, defendant Michelle Thomas regularly seized and sold real property with fair market values which far exceeded the total tax debts. **Exhibits H and I.**[4] In fact, Gratiot County by its treasurer's office profited (i.e. sold the properties for more than the tax debt owed) in 23 separate instances in 2016 and 2017. ***Id.*; see also Exhibit G, pp. 62-63.** For the properties selling for more than their total tax debts, defendants profited over $180,000[5] above their respective unpaid tax, interest, penalties,

---

[4] Defendant Thomas testified these records are complete and accurate records of foreclosed properties for 2016 and 2017. **Exhibit G, p. 12.**

[5] Precisely, the number for 2016 and 2017 is $180,620.52

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

and fees. Neither defendant has ever returned the sales surplus and has never paid just compensation for the full equity destroyed beyond the tax debt owed. **Exhibit G, pp. 53-56.** Defendants keep the sale surpluses when the property seized and sold is worth more than the total tax owed. *Id.*, **pp. 60-61.** Thus, the violative constitutional acts toward plaintiff Freed are not a one-off, but part of a widespread custom and practice by defendants for many years. The retained sale surplus is used for public purposes. *Id.*, **p. 34; see also Exhibit J, p. 2.**[6]

At her deposition, defendant Thomas was clear about the process of retaining sales proceeds and the non-payment of destroyed equity.

Plaintiff's counsel:     Okay. So, for example -- let me just give you an example as a hypothetical. Pretend a piece of property is worth $100,000 and the taxpayer does not pay $2,000 in taxes and interest and penalties, and it rounds out -- by the stroke of miracle it comes out to exactly $2,000 on the day that -- on the day that we're asking. And the property sells for $10,000. What happens, if anything, to that difference between 10,000 and $100,000 in value?

Treasurer Thomas:     I don't do anything with it.

Plaintiff's counsel:     Okay. If someone came -- pretend that same person came into your office and says, I

---

[6] "The county retains all delinquent taxes, interest and penalties collected to offset its tax collection costs. *** The surplus earned, after any borrowing is paid off, is under the control of the board of commissioners. The surplus may be accumulated to reduce or avoid future borrowings, or expended for other purposes as authorized by the board of commissioners."

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

|                      | demand a refund of $90,000, would you have issued them a check for $90,000? |
| Treasurer Thomas:    | No. |
| Plaintiff's counsel: | All right. Is there any process or procedure that's available to this former homeowner, property owner to get that $90,000 back? |
| Treasurer Thomas:    | No. |
| Plaintiff's counsel: | Before I was asking the hypothetical question about the $2,000 debt, the $10,000 sale, and the $100,000 value of the property. Is there any process and procedure right now if Mr. Freed was to make the position that his property was worth more than the sale price, is there any process or procedure that Mr. Freed could invoke, to your knowledge, that would allow him to get back his equity, the difference between the sale price and the value of the property today? |
| Treasurer Thomas:    | Not that I know of. |

**Exhibit G, pp. 54-56.**

In October 2017, plaintiff Freed filed this complaint making two constitutional claims via 42 U.S.C. §§ 1983 and 1988. Plaintiff Freed asserts that defendants, acting under the color of law of the State of Michigan, subjected plaintiff Freed to the deprivation of rights, privileges, or immunities secured by the Constitution, namely both the Fifth (via the Fourteenth) Amendment as a taking and the Eighth Amendment as a violative excessive fine. After the deposition of defendant Thomas, this motion now follows.

5

## STANDARD OF REVIEW

Summary judgment pursuant to Rule 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252, (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, (1986).

## ARGUMENT

Depending on how the Court views the actions of defendants, the Court can take three analytical paths that reach the same result—the unconstitutional destruction of the equity of plaintiff Freed's home and real property. Under 42 U.S.C. § 1983, a plaintiff must allege that he was deprived of a right secured by the Federal Constitution by a person acting under color of state law. *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). There is no dispute that defendants were acting under the color of

6

state law—they were acting pursuant to the GPTA, MCL 211.78 et seq. **Exhibit G, p. 42.** The only disputed question is whether the application of the GPTA by defendants toward plaintiff Freed was constitutional. Plaintiff Freed asserts it was not.

# I.    UNCONSTITUTIONAL TAKINGS

This legal challenge seeks to correct the gross injustice of a taking caused by defendants' application of Michigan's tax laws together with the local government's practice of enjoying and utilizing taken surplus proceeds from the sale of tax-delinquent homes and other properties. By keeping profits from property tax sales far beyond what is actually owed in past due taxes, defendant Gratiot County and its treasurer reaps a 'stolen' windfall while the former owners lose their hard-earned value left (after paying the tax debts) that accrued during ownership—the equity.

## A.    Takings Jurisprudence

The Fifth Amendment to the U.S. Constitution guarantees that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V.  This restraint on the power of a government to take private property, made applicable to the states through the Fourteenth Amendment, *Phillips v. Washington Legal Found.*, 524 U.S. 156, 163, (1998), is "designed to bar [the government] from forcing some people alone to bear public

7

burdens which, in all fairness and justice, should be borne by the public as a whole." *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 123 (1978). Thusly, plaintiff Freed must show that defendants (1) took property[7] and (2) failed to compensate justly (or failed to put the property to public use). *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 425 (6th Cir. 2002)(citing *Murray v. United States*, 817 F.2d 1580, 1583 (Fed. Cir. 1987)). While true that property interests are not created by the Constitution but are created and defined by existing rules or understandings that stem from an independent source such as state law, *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972), a government cannot "by *ipse dixit*… transform private property into public property without compensation." *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 164 (1980). This is because the Takings Clause "stands as a shield against the arbitrary use of governmental power." *Id.* The government's power to "redefine" existing property rights and value is "necessarily constrained" by the Constitution. *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1014 (1992). When the government physically takes

---

[7] A wide and varying array of interests, including personal property, money, interest on money, liens, mortgages, and homes, are protected by the Takings Clause as property. See, e.g., *Horne v. Dep't of Agric.*, 135 S. Ct. 2419, 2426 (2015) (personal property); *Koontz v. St. Johns River Water Mgmt. Dist.*, 133 S. Ct. 2586, 2601 (2013) (money and real property); *Phillips v. Washington Legal Found.*, 524 U.S. 156, 168 (1998) (accrued interest); *Armstrong v. United States*, 364 U.S. 40, 48 (1960) (liens); *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 601-602 (1935) (mortgages).

possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner regardless of whether the interest that is taken constitutes an entire parcel or merely a part thereof. *Brown v. Legal Foundation of Wash.*, 538 U.S. 216, 233 (2003)(internal citations omitted). The amount paid must be is "just compensation." U.S. Const. am. V. "Just compensation" means the full monetary equivalent of the property taken. *Almota Farmers Elevator & Whse. Co. v. United States*, 409 U.S. 470, 473 (1973). The owner of taken property is to be put in the same position monetarily as he would have occupied if his property had not been taken. *Id.*, at 473-474. The former owner is entitled to the fair market value of his property at the time of the taking. *Id.*, at 474. Fair market value is "what a willing buyer would pay in cash to a willing seller at the time of the taking." *Id.*; see also *United States v. 564.54 Acres*, 441 U.S. 506, 511 (1979).

1.   ***Nelson***

The core issue is whether the Takings Clause permits governments to keep *the excess* sales surplus and/or destroy *excess* equity in real property without paying just compensation. Previously, liable municipalities and their treasurers have attempted to rely on upon the Supreme Court's decision in *Nelson v. City of New York*, 352 U.S. 103 (1956) in claiming that this issue

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

has already been resolved in their favor. However, it has not. If one reads *Nelson* carefully, the Supreme Court did recognize this issue but reserved it for resolution. *Nelson, supra*, at 110. In *Nelson*, New York City took property belonging to New Yorkers via state tax-sale procedures to collect on overdue water bills. *Id.*, at 105-106. The owners brought a takings challenge when the City kept the excess proceeds or sale profits. *Id.,* at 109. The Supreme Court held that no taking occurred *because the New York statute provided former owners with a process* to recover the surplus proceeds. *Id.*, at 110. In making that holding, the *Nelson* Court reserved the question raised here, of whether government effects a taking when state law fails to provide a means to reimburse surplus funds. Other courts have agreed with this reading. *Coleman through Bunn v. D.C.*, 70 F. Supp. 3d 58, 77-78 (D.D.C. 2014) (*Nelson* "expressly reserved" the issue). So, the question becomes, does the GPTA provide (after the taking) a proceeds-return process when excess equity is taken? The answer for this case, unlike in *Nelson*, is no. **Exhibit G, pp. 54-56**.

### 2. The GPTA

In 1999, Public Act 123 known as the General Property Tax Act, or GPTA, was enacted changing Michigan from a tax-lien to a tax-deed state. Under the GPTA, a Michigan property becomes "delinquent" when the owner

fails to pay taxes levied in the previous year. MCL 211.78a(2). If the owner fails to pay the outstanding taxes, fees, and penalties, then one year later, the GPTA designates the property as "forfeited" in name only, as the delinquent property owner still keeps full title and all rights of possession. MCL 211.78g(1). If all taxes are not paid one more year later, the foreclosing governmental unit[8] will foreclose, and then auction the property at a tax sale. *Id.* The process is outlined in detail in **Exhibit E**. Foreclosure is adjudicated by the local circuit courts in Michigan as an *in rem* proceeding. *Smith v. Cliffs on the Bay Condominium Ass'n (After Remand)*, 626 N.W.2d 905, 906 (Mich. App. 2001); MCL 211.78h(1). Once the property is foreclosed, Michigan law has directed that state trial courts are barred from providing *any* relief from that judgment, *In re Petition of Tuscola Cnty. Treasurer*, 895 N.W.2d 569 (Mich. App. 2016) *lv denied* 900 N.W.2d 879 (Mich. 2017), even in the face of a mistake by county treasurer in calculating the applicable tax, see *In re Petition of Isabella Cnty. Treasurer*, No. 329858, 2017 WL 1393854 (Mich. Ct. App. April 18, 2017). Additionally, the GPTA acts to permit local governments from refunding to the owner any excess proceeds from tax sales, but instead distributes the same to either the local county's general

---

[8] Defendant Thomas as Gratiot County treasurer is the foreclosing governmental unit. MCL 211.78(8)(a)(i); see also **Exhibit G, pp. 37-38.**

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

fund[9] or the State of Michigan's land reutilization fund depending on who the foreclosing governmental unit was. See MCL 211.78m(8)(h); see also MCL 211.78(3). There is no proceeds-return process under the GPTA, see MCL 211.78m, and Gratiot County has failed to self-create any such process for its return either. **Exhibit G, p. 43.** Other courts who have reviewed similar situations where the government gets to keep the equity proceeds have found the same to be unconstitutional. E.g. *Thomas Tool Services, Inc. v. Town of Croydon*, 761 A.2d 439, 441 (N.H. 2000); *Bogie v. Town of Barnet*, 270 A.2d 898, 903 (Vt. 1970).

### 3. Freed's Property

On the facts of this case, a taking of the surplus equity without payment of just compensation has occurred here. "Equity" is the fair market cash value of the property after deduction of all encumbrances (i.e. liens). *Crane v. Commissioner*, 331 U.S. 1, 7 (1947)("'equity' is defined as 'the value of a property above the total of the liens.'"); see also *Stephens Indus., Inc. v McClung*, 789 F.2d 386, 392 (6th Cir. 1986). "Equity" is monetary value and an asset with value is protected property under the Constitution. Plaintiff

---

[9] A local government may decide in lieu of placing the profits into the general fund of a county to create a Delinquent Tax Revolving Fund which has some accounting benefits. See MCL 211.87b-d; see also **Exhibit J.** Still, "the surplus earned, after any borrowing is paid off, is under the control of the board of commissioners." ***Id., p. 2.*** In other words, it is still county-controlled money throughout.

Freed is asserting two theories of recovery, of which this Court can grant both.

### a.    The Full Equity Theory

In 2017, plaintiff Freed had his home and property foreclosed for a tax debt of a mere $1,109.06 and the defendants seized his _entire_ property's equity undisputedly worth $98,800.00. **Exhibit A, p. 6; Exhibit B.** By defendants seizing and utilizing the excess equity of plaintiff Freed's real property and doing so without payment of just compensation, defendants committed an unconstitutional taking. In other words, defendants, acting under the color of law, caused plaintiff Freed to give up all his equity (i.e. money) in excess of his tax debt to the government upon the forced sale of his property at less than the fair market value. This resulted in the destruction of a property right—the legal equity—in the amount of $97,690.94 ($98,800.00 minus $1,109.06). In other words, the taking occurred when defendant Thomas came to be owner of plaintiff Freed's property and yet had not paid just compensation.  The theft and destruction of plaintiff Freed's property (i.e. his excess equity) effectuated a taking of equity worth $97,690.94 without initiating condemnation proceedings or paying just compensation. See **Exhibit G, p. 44.** Defendants were undisputedly entitled to seize $1,109.06, but not seize and destroy the remaining equity of

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

$97,690.94. See *Horne v Dep't of Agriculture*, 576 U.S. __ (2015)(a classic taking is one in which the government directly appropriates private property for its own use; the government's actual taking of possession and control of the property gives rise to a taking); *United States v. General Motors Corp.*, 323 U.S. 373, 378 (1945) (holding that destruction of property constitutes a taking). Plaintiff Freed does not dispute the government can take reasonable steps to seize that *which it is owed* on the actual tax debt—$1,109.06. Taking full ownership of plaintiff Freed's *entire property* which is far beyond the actual tax debt owed (which itself already includes various monetary penalties) constitutes a taking which required just compensation.[10]

### b. Sales Surplus Theory

As a second theory, we again start with the undisputed fact that defendants seized plaintiff Freed's _entire_ property's equity undisputedly worth $98,800.00. **Exhibit A, p. 6; Exhibit B.** Defendants then sold the property at a tax sale for only $42,000.00—or less than half of its actual

---

[10] Defendants cannot argue that the law changes the character of this property into a worthless nothingness. Defendants cannot transform private property *ipse dixit* into a lesser or not existing asset. *Webb's, supra,* at 164. In other words, the Takings Clause prevents the exercise of governmental power to simply redefine plaintiff Freed's property rights to his equity as extinguished to more easily aid in the collection of a small tax debt because such action is "necessarily constrained" to such redefinition by the Constitution. *Lucas, supra,* at 1014. To the extent it cannot be segregated, the surplus equity has been destroyed for a public purpose (i.e. to more easily collect past due taxes) and still effectuates a taking.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

market value. **Exhibit C**. After allowing defendants to properly recapture the amount needed to fully satisfy the tax debt of $1,109.06, defendants refused to return (as is their custom) the sales surplus or profit from the below-market fire sale after the debt was paid from the proceeds ($42,000.00 minus $1,109.06). **Exhibit G, p. 35, 43.** In other words, defendants took the excess sales surplus after the tax sale of the property was complete in the amount of $40,890.94. There is no administrative methodology to seek or obtain the return of the taken sales surplus. ***Id.*, p. 56.**   As defendant Thomas' deposition confirms, the defendants just refuse to return the sales surplus (i.e. pay just compensation) even though its entire debt was paid as being nothing more than $1,109.06.[11]

### c.    Both Theories Result in a Taking

By his dual takings theories, plaintiff Freed is challenging the defendants' action of both destroying the market-value equity in his property

---

[11] In interest of disclosure to this Court, this theory was previously rejected by a US District Judge in the Western District of Michigan. *Wayside Church v. County of Van Buren*, No. 1:14-cv-1274 (W.D. Mich. Nov. 9, 2015). Yes, plaintiff Freed is reasserting that same theory as the sale surplus theory; however, he is also asserting a second theory—the full equity theory—and an Eighth Amendment excessive fine claim. Notwithstanding, the *Wayside* district court decision was fully vacated by the Sixth Circuit. *Wayside Church v. County of Van Buren*, 847 F.3d 812 (6th Cir. 2017) *cert. denied* 138 S. Ct. 380 (2017).   A vacated decision has no effect whatever and has no vitality as precedent. *United States v. Sigma Int'l, Inc.*, 300 F.3d 1278, 1280 (11th Cir. 2002); *Albers v. Whitley*, 743 F.2d 1372, 1378 (9th Cir. 1984). Thus, that decision is not precedent but should not be persuasive as to actual realities suffered as equity theft victims, and should legally and easily be discarded. It is suspected, however, that defendants will heavily rely upon on it.

to fulfill a debt of a mere $1,109.06 as a legal theory and also retaining the sale surplus proceeds as a second theory of liability. Both result in a taking without just compensation by defendants and thus are constitutional violations remedied by the relief provided by §§ 1983 and 1988. The facts, as outlined herein, show a lack of material question of fact that defendants effected an unconstitutional taking (i.e. no payment of just compensation) on two theories. Summary judgment is warranted. The Court is requested to find a taking of either $97,690.94 (being $98,800.00 fair market value minus $1,109.06) or alternatively $40,890.94 (being $42,000.00 sale price minus $1,109.06) or both.[12]

## II.   EXCESSIVE FINES

The Eighth Amendment provides that "excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Due Process Clause of the Fourteenth Amendment "makes the Eighth Amendment's prohibition against excessive fines… applicable to the State." *Cooper Industries, Inc. v. Leatherman Group*, 532 U.S. 424, 433-434 (2001); see also *Qwest Corp. v.*

---

[12] If this Court finds that both theories effectuate takings without just compensation, then plaintiff Freed would only be entitled to $97,690.94 as economic damages to prevent overlapping recoveries.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

*Minnesota Pub. Utilities Comm'n*, 427 F.3d 1061, 1069 (8th Cir. 2005) ("[t]he Eighth Amendment's prohibition of excessive fines applies to the states through the Due Process Clause of the Fourteenth Amendment.").[13] The Eighth Amendment was "intended to prevent the government from abusing its power to punish..." *Austin v. United States*, 509 U.S. 602, 609 (1993). Precisely, the Excessive Fines Clause constitutionally limits the government's power to extract payments, whether "in cash *or in kind*," as punishment for some offense. *Id.*, at 609-610 (emphasis added). Thusly, the Eighth Amendment's prohibition "cuts across the division between the civil and the criminal law." *Id.*, at 610. The *Austin* Court therefore concluded that an *in-rem* forfeiture[14] is subject to the Eight Amendment's limitation, but Supreme Court declined that invitation to establish an applicable test. That came later in *United States v. Bajakajian*, 524 U.S. 321 (1998). In *Bajakajian*, a man attempted to leave the country without reporting, as required by federal law, that he was transporting more than ten thousand dollars in currency. In response, the government sought forfeiture of the entirety of his

---

[13] Despite this prior precedence, the US Supreme Court has issued a writ of certiorari in the case of *Timbs v. Indiana* (Case No. 17-1091) answering the question of whether the Eight Amendment's Excessive Fines Clause is incorporated against the States under the Fourteenth Amendment.

[14] Defendants' seizing of property in excess of the tax owed has been confirmed to be an *in-rem* forfeiture by Michigan law. *Rafaeli, LLC v. Oakland Cty.*, No. 330696, 2017 WL 4803570 (Mich. Ct. App. Oct. 24, 2017) [previously cited by this Court in ECF No. 25 as "*Rafaeli I*"].

$357,144.00 being transported, even with no underlying criminal connection. The Supreme Court held full forfeiture of the currency undertaken by the Government would be grossly disproportional to the gravity of the offense in violation of the Excessive Fines Clause. In making this holding, the *Bajakajian* Court established the constitutional test for excessive fines—a forfeiture is excessive if it is "grossly" but not strictly, "disproportional to the gravity of a defendant's offense." *Id.*, at 321, 337. "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." *Id.*, at 334. Using this standard, the Supreme Court had "little trouble" concluding that the forfeited property in *Bajakajian* constitutes a punitive punishment and thus is an excessive fine under the Eighth Amendment. *Id.*, at 334-335, 339-340.

Here, plaintiff Freed is challenging the same gross disproportionality of seizing and destroying $98,800.00 in equity to recoup a $1,109.06 debt as an as-applied Excessive Fines Clause challenge.[15] The past due tax debt is not a criminal offence and there is no relationship to the gravity of the

---

[15] If defendants had, hypothetically, sought and obtained a fine-by-forfeiture of real property worth say $1,200.00 for the debt of $1,109.06, this would likely not be a grossly disproportional fine. But in how the defendants applied the GPTA that resulted in a fine-by-forfeiture of approximately 90 times the amount the debt—seizing and destroying plaintiff Freed's equity of $98,800 to recoup a $1,109.06 debt—which can only be deemed a grossly disproportional fine under the Eighth Amendment.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

offense—the defendants take the entirety of equity no matter how much past due tax is owed. The punishment is the in-kind fine impose by defendants— a forfeiture—of equity consisting of ≈90 times the amount the debt ($98,8000 divided by $1,109.06). In *Bajakajian,* the fine-by-forfeiture of ≈35 times ($357,144.00 divided by $10,000.00) of the amount of the currency was deemed a grossly disproportional fine in violation of the Eighth Amendment. As such, defendants forfeiture-as-a-fine of plaintiff Freed's property worth $98,800.00 is, as a matter of law, a grossly disproportional fine in violation of the Eighth Amendment. Because there is no material question of fact as to liability, summary judgment in favor of plaintiff Freed is requested and is warranted.

## III.    MUNICIPAL LIABILITY

Civil rights claims under 42 U.S.C. § 1983 are claims against an official for actions an official takes under color of state law, i.e. under their responsibilities as a governmental actor. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "To establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Id.*, at 166. In an official-capacity claim, the relief sought is only nominally against the official and, in fact, is against the official's office and thus the government entity itself. *Lewis v. Clarke*, 137 S. Ct. 1285, 1292

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

(2017)(citations omitted). To successfully make out an *official* capacity case, "more is required." *Kentucky, supra,* at 160. "In an official-capacity action… [the] governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation." *Id.* A constitutional claim against a municipality under section 1983 must be based on the county's own conduct. *Monell*, *supra*, at 691. Thus, in an official-capacity suit, the entity's policy or custom, and not just their employee's singular acts, must have played a part in the violation of federal law. See *Monell v. New York City Dept. of Social Service*s, 436 U.S. 658 (1978). To meet the *Monell* standard, a civil rights plaintiff uses at least one of four methods to establish municipal liability: 1.) an officially adopted or promulgated policy, or legislative enactment; 2.) a custom or practice that is not written or formally adopted, but that is a pervasive, long standing practice that has the force of law; 3.) a failure to train, supervise, discipline, or adequately screen; and/or 4.) point to a particular decision or act made by someone who is asserted to be a final policymaker for the entity. *Thomas v City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005); see also Karen M. Blum, *Making Out the Monell Claim under Section 1983*, Touro Law Review, Vol. 25: No. 3, Article 2, *available at* http://digitalcommons.tourolaw.edu/lawreview/vol25/iss3/2, at pp. 829-830. Two of the four are easily met here.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

### A.      Custom or Practice

The governmental custom can meet the *Monell* standard when a custom or practice exists but has not received formal approval through the body's official decision-making channels. *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 556 (6th Cir. 2003). However, custom or usage has the force of law as a "widespread practice" when "duration and frequency of the practices warrants a finding of either actual or constructive knowledge by the policymaker with responsibility for oversight that the practices have become customary among its employees." *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987). For a custom to give rise to *Monell* liability, the custom must be so permanent and well settled as to constitute a custom and usage with the force of law. *Miller v. Calhoun County*, 408 F.3d 803, 815 (6th Cir. 2005). Here, defendant Gratiot County, by its official policymaker in this area of tax foreclosures, has repeatedly and continuously seized its residents' property worth numerous times its fair market value, paid the small debt, destroyed the remaining equity, and then refuses to return the remaining/surplus proceeds back to the former owner. Compare **Exhibits H and I** with **Exhibit G, p. 36.** The staff of the County Treasurer's office understands this to be process as well and publicly conveys the same. **Exhibit F, p. 2** ("no one gets

21

money back."). This easily meets as a permanent and well settled custom of Gratiot County and thereby meeting the *Monell* standard.

### B.    Particular Decision

Municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). In this case, plaintiff Freed asserts that the decision to seize and then retain-in-part (the proceeds) and destroy-in-part (the equity existing in excess of $42,000) is a single decision policy of Gratiot County's policymaker that also meets *Monell*. The term "policymaker" includes "officials 'whose acts or edicts may fairly be said to represent official policy,'" not just members of official legislative bodies. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).

The treasurer is the final policymaker as to the implementation of the process of foreclose and seizure of an owner's property when excess equity remains. **Exhibit G, p. 41-43.** It is her decision alone on whether to seize or sell property; the same is not subject to review by any other state or county official. *Id.* She is the person who files the petition with the local Michigan

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

circuit court, signs the deeds, and records the Notices of Judgment.[16] E.g.

**Exhibit C**; see also **Exhibit G, p. 11, 49**.

In this case, her decision not to allow plaintiff Freed to pay the entire amount of the then existing past due tax, interest, fees, and costs evidences a full and final policy to cause the County to keep and enjoy the excess proceeds and/or destroy equity in real property belonging to plaintiff Freed without paying just compensation and/or causing the implementation of an excessive fine. Liability as to the County can be applied via *Monell*.

### RELIEF REQUESTED

WHEREFORE, this Court is requested to grant Plaintiff Donald Freed summary judgment pursuant to Fed. R. Civ. P. 56 for lack of material question of fact as to Counts I and II. As such, the Court is requested, at this time, to—

a.   Enter an order, pursuant to the Declaratory Judgment Act, declaring the conduct of Defendants as being unconstitutional;

b.   Enter an order, pursuant to the Declaratory Judgment Act, declaring the *General Property Tax Act*, Act 206 of 1893, as applied to Plaintiff DONALD FREED as being unconstitutional and enjoin its future application in the same manner against Plaintiff DONALD FREED by Defendants; and

c.   Enter an award of damages in the amount of taken and/or forfeited equity and/or funds in excess of the unpaid taxes and

---

[16] Notwithstanding, under this theory, a pattern of past misconduct need not be established when the actor was a policymaker with final policymaking authority. *Burgress v Fischer*, 735 F.3d 462, 479 (2013).

administrative expenses, costs and interest of $1,109.06 obtained and retained by Defendants by its illegal actions, i.e. $97,690.94 or $40,890.94.

All remaining issues are reserved for further proceedings and motion practice as this Court and the court rules direct.

Date: July 15, 2018                     RESPECTFULLY SUBMITTED:

                                    /s/ Philip L. Ellison
                                    **OUTSIDE LEGAL COUNSEL PLC**
                                    **PHILIP L. ELLISON (P74117)**
                                    Counsel for Plaintiffs

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

## CERTIFICATE OF SERVICE

I hereby certify that on date stated below, I filed the foregoing document with the ECF/CM system which will serve an email copy of the same to all counsel of record (at their email address of record) on the date stated below.

Date: July 15, 2018

RESPECTFULLY SUBMITTED:

/s/ Philip L. Ellison
**OUTSIDE LEGAL COUNSEL PLC**
**PHILIP L. ELLISON (P74117)**
Counsel for Plaintiffs

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

25