UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD FREED,

     Plaintiff,

                                                    Case No. 17-cv-13519
v.                                         Hon. Matthew F. Leitman

MICHELLE THOMAS, *et al.*,

     Defendants.

_____/

**<u>ORDER (1) SUSTAINING IN PART AND OVERRULING IN PART THE OBJECTIONS TO THE REPORT AND RECOMMENDATION (ECF Nos. 173, 174); (2) ADOPTING IN PART THE RECOMMENDED DISPOSITION OF THE REPORT AND RECOMMENDATION (ECF No. 172); (3) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S RENEWED MOTION FOR ATTORNEY'S FEES (ECF No. 162); AND (4) TERMINATING AS MOOT PLAINTIFF'S MOTION TO EXPEDITE (ECF No. 169) AND PLAINTIFF'S MOTION FOR RULING ON PENDING OBJECTIONS (ECF No. 178)</u>**

In this action, Plaintiff Donald Freed brought claims against Gratiot County alleging, among other things, that the County took his property without just compensation in violation of the Fifth, Eighth, and Fourteenth Amendments when it foreclosed on his residence (for non-payment of taxes), sold the residence, and retained the full amount paid to them for the residence.[1]  Roughly one year after

---

[1] Freed originally named Gratiot County Treasurer Michelle Thomas as an additional defendant.  She did not participate in the fee dispute now before the Court because the then-presiding judge dismissed the claims against her in her individual and

1

Freed filed suit, the State of Michigan, through the Michigan Attorney General, intervened in this action to defend the constitutionality of certain Michigan statutory provisions governing the foreclosure process that Freed had challenged.

The district judge who was then presiding over this action entered judgment in Freed's favor (after an initial appeal) and later awarded Freed $81,183.37 in attorney's fees – an amount that was 35% less than Freed had requested – plus costs. The then-presiding judge ordered the County to pay 95% of that amount and ordered the State to pay 5%. All parties appealed the fee award. Freed challenged the fee reduction as excessive; the State and the County (collectively, the "Fee Opponents") argued that the reduction should have been even greater; and the State challenged the allocation of payment responsibility. The Sixth Circuit vacated the fee award in its entirety and remanded for further proceedings.[2]

Now before the Court is Freed's renewed motion for attorney's fees. (*See* Mot., ECF No. 162.) The Court referred the motion to the assigned Magistrate Judge. On December 10, 2025, she issued a report and recommendation (the "R&R") in which she recommended that the Court (1) award Freed almost all of the fees he sought (making only a slight reduction to the hourly rate for one of his

---

official capacities. (*See* Opinion and Order Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment, ECF No. 100, PageID.1721-1722.)

[2] While the parties' appeals were pending in the Sixth Circuit, the case was re-assigned to the undersigned. (*See* Text Order, 07/02/2024.)

attorneys during some phases of the litigation) and (2) split the responsibility for paying the fee award 50-50 between the Fee Opponents. (*See* R&R, ECF No. 172.) The Fee Opponents have now filed separate sets of objections to the R&R. (*See* Objs., ECF Nos. 173, 174.)  Freed has not filed any objections.  For the reasons explained below, the Fee Opponents' objections are **SUSTAINED IN PART** and **OVERRULED IN PART**.  And Freed's fee motion is **GRANTED IN PART** and **DENIED IN PART** as set forth below.

# I

## A

This case has a long and complicated procedural history.  It has spanned over eight years and spawned three published Sixth Circuit decisions on appeal.  In its most recent decision, the Sixth Circuit succinctly set forth the aspects of the case's history that are relevant to the parties' fee dispute.  For the sake of efficiency, the Court reproduces that account here:

### A.

> In 2017, Gratiot County foreclosed on Donald Freed's home because he did not pay his taxes. Freed's property was worth $98,800. At the time of foreclosure, Michigan's General Property Tax Act (GPTA) did not require that "foreclosing governmental unit[s]" return the surplus proceeds from a foreclosure sale to the property owner. *Rafaeli, LLC v. Oakland Cnty.*, 505 Mich. 429, 952 N.W.2d 434, 446 (2020). So even though Freed owed just under $1,110, the county sold his property for $42,000 and kept everything.

3

Freed sued Gratiot County and its treasurer Michelle Thomas under 42 U.S.C. § 1983. He alleged that the county took his property without just compensation in violation of the Fifth and Fourteenth Amendments.

Because Freed's claim implicated the GTPA's constitutionality, Michigan intervened under 28 U.S.C. § 2403(b). That federal law entitles states to join "any action ... wherein the constitutionality of any statute of that State affecting the public interest is drawn in question." 28 U.S.C. § 2403(b). It also makes intervening states "subject to all liabilities of a party as to court costs." *Id.*

The district court dismissed Freed's complaint for lack of subject matter jurisdiction, citing our decision in *Wayside Church v. Van Buren County*, 847 F.3d 812, 822-23 (6th Cir. 2017). *Freed v. Thomas*, No. 17-cv-13519, 2018 WL 5831013, at *2-3 (E.D. Mich. Nov. 7, 2018). Freed appealed and we reversed the dismissal. *Freed v. Thomas* (*Freed I*), 976 F.3d 729, 732 (6th Cir. 2020). Recognizing that the Supreme Court's ruling in *Knick v. Township of Scott*, 588 U.S. 180, 139 S.Ct. 2162, 204 L.Ed.2d 558 (2019), partially abrogated *Wayside Church*, we held that Freed's claim was no longer jurisdictionally barred. *Freed I*, 976 F.3d at 734-41.

While Freed's first appeal was ongoing, the Michigan Supreme Court decided *Rafaeli, LLC v. Oakland County*, 505 Mich. 429, 952 N.W.2d 434 (2020). *Rafaeli* held that the Michigan Constitution gives former owners of foreclosed property a right to the surplus proceeds from the sale of that property. *Id.* at 466.

B.

On remand, the county defendants and the Michigan Attorney General conceded that, post-*Rafaeli*, Michigan law required the government to return surplus proceeds

4

from a foreclosure sale to the property's former owner. Thus, the parties agreed that Freed experienced a taking.

But the parties disagreed about the value of Freed's taken property. The state and county argued that Freed could only recover the proceeds from the foreclosure sale that exceeded the amount to which the proceeds exceeded his debt. Freed, on the other hand, claimed that Gratiot County took his "equity" and owed him the entire fair market value of his home (minus liens) at the time of the foreclosure sale—almost $98,000. The county defendants also argued that neither Thomas nor the county could be held liable under various immunity doctrines.

The district court granted partial summary judgment to Freed on his takings claim. *Freed v. Thomas*, No. 17-cv-13519, 2021 WL 942077, at *2-4 (E.D. Mich. Feb. 26, 2021). We affirmed. *Freed v. Thomas* (*Freed II*), 81 F.4th 655, 657 (6th Cir. 2023). Citing *Rafaeli*, we concluded that the Fifth and Fourteenth Amendments required Gratiot County to pay Freed the difference between the foreclosure sale and his debt. *Id.* at 658-59. But we rejected Freed's equity theory. *Id.* We also determined that the county was not immune from judgment but dismissed the claims against Thomas as barred by qualified immunity. *Id.* at 660, 661.

C.

Back in district court, Freed moved for attorneys' fees. Freed claimed that his attorney worked 366 hours on the case. For 274.5 of those hours, the attorney charged a rate of $525 per hour. The attorney's hourly rate was $595 for the remaining 91.5 hours, which were spent working on the *Freed II* appeal. To support his requested fee, Freed submitted a log of his attorney's work and Michigan Bar documents showing the average rates charged by attorneys in various areas within the state[.]

> The county opposed Freed's motion. So did the state of Michigan, which argued that it could not be made liable for attorneys' fees.
>
> The district court awarded fees to Freed, though it reduced by 35% both Freed's claimed hours and rates. To explain the reductions, the court cited evidence that Freed's attorney overbilled for some services, as well as the benefit that Freed received from the *Knick* and *Rafaeli* decisions. The court also referenced, but did not apply, the *Johnson* factors, which we have stated courts may use to adjust fee awards. *See Reed v. Rhodes*, 179 F.3d 453, 471 & n.3 (6th Cir. 1999) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)).
>
> The district court then ordered Gratiot County to pay 95% of Freed's fees and the state of Michigan to pay the remaining 5%. The court based that apportionment on its assessment that Michigan's intervention did not inordinately increase Freed's attorney's workload. All three parties appealed.

*Freed v. Thomas* ("*Freed III*"), 137 F.4th 552, 555–57 (6th Cir. 2025).

After setting forth this procedural history, the Sixth Circuit turned to the merits of the parties' challenges to the fee award entered by the then-presiding district judge.  The court first held that Freed was a prevailing party, allowing him to recover "a reasonable attorney's fee" under 42 U.S.C. § 1988(b). *Id.* at 557–58. "Although he did not prevail on every claim against the county," the court wrote, "Freed's partial success [was] enough to entitle him to at least some fee award." *Id.* at 558 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  And the court

determined that Freed could recover fees from both of the Fee Opponents. *See id.* at 557–60.

The court then evaluated the then-presiding judge's decision to reduce Freed's requested fees by 35%. The court held that the then-presiding judge "needed to be more specific in justifying the 35% reduction." *Id.* at 561. The court observed that while a district court "can adjust" a fee award based on "the extent to which the party seeking fees prevailed," it was unclear in this case whether the then-presiding judge had considered Freed's "unsuccessful arguments as a basis for the 35% reduction." *Id.* at 562. It said that "if the district court intended to reduce Freed's fee award based on his partial success, it needed to offer a more detailed explanation for its decision." *Id.* (citing *Hensley*, 461 U.S. at 437). Finally, the court did "not question the [district] court's apportionment of fee liability between Gratiot County and Michigan," but it noted that "the district court may find it necessary to further explain its decision in the context of 'the relative culpability of the parties, which of them was the focus of litigation, and consequently, which party's efforts required a larger portion of the plaintiff's counsel time.'" *Id.* at 563 (quoting *Avenue Grille, Inc. v. Rootstown Twp.*, 113 F.3d 1234, 1997 WL 219740, at *2 (6th Cir. 1997)).

The court vacated the fee award and remanded the case for further proceedings. *See id.*

**B**

Following remand, Freed filed a renewed motion for attorney's fees and costs. (*See* Mot., ECF No. 162.)   By that time, the case had been reassigned to the undersigned.

In Freed's renewed motion, he argued that he was entitled to a total of $305,071.83 in fees and costs, but he acknowledged that $84,200.88 of that amount had already been paid by the Fee Opponents following the earlier fee award. (*See id.*, PageID.2545.)

Freed calculated his requested fee award using the "lodestar method." (*Id.*, PageID.2528.)  As explained in more detail below, that method involves multiplying the number of hours reasonably expended on the litigation by an attorney's reasonably hourly rate. *See Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 627 (6th Cir. 2013).

Freed divided his lodestar request into three separate "phases" of the case, and he requested a different hourly rate for each phase as follows:

> For Phase I (blue) of the case, Freed requests an hourly rate of $525.00 per hour for his counsel's time and efforts in this case. **Exhibit C**. For Phase II (orange), which consists of the start of the second *Freed* appeal through the mandate of that case, Freed requests an hourly rate of $595.00 per hour. For the most recent lag of the case, starting from the remand of *Freed II* through the appeal in *Freed III* as Phase III (green), an hourly rate of $635.00 per hour is requested. In summary, the time frame is as follows:

| | Date Range | Hours | Rate |
|---|---|---|---|
| Phase I (Blue) | 10/28/2017 – 03/11/2021 | 275.05 | $525.00 |
| Phase II (Orange) | 3/12/2021 - 9/29/2023 | 90.75 | $595.00 |
| Phase III (Green) | 10/13/2023 – Present | 127.50 | $635.00 |
| Total | | 493.30 | |

(Mot., ECF No. 162, PageID.2529.)  Freed said that "[t]hese trifurcated rates account for inflation and case progression, and are warranted for [his attorney,] Philip L. Ellison." (*Id.*, PageID.2530.)

Freed justified the requested hourly rates for each phase by comparing them to "the recognized range for highly-experienced litigators in Michigan like [Ellison], as evidenced by the most recent data from the State Bar of Michigan's Economics of Law Practice surveys." (*Id.*, PageID.2536.)  He drew upon the hourly rates for "civil rights" litigators listed in the State Bar surveys. (*See id.*, PageID.2537-2538.) Those annual surveys list the mean and median fees charged by civil rights litigators and also list the 25th, 75th, and 95th percentiles of fees charged by those lawyers. Freed's claimed hourly rates fell into the 95th percentile (or close to it) for all three phases. (*See id.*)

In addition, Freed requested $9,622.13 in costs and $16,059.70 in attorney's fees and costs for his mediation co-counsel, Matthew Gronda. (*See id.*, PageID.2544.)

Freed provided the following chart setting forth his total fee calculation:

|  | Hours | Rate | Total |
|---|---|---|---|
| Phase I (Blue) 10/28/2017 – 03/11/2021 | 275.05 | $525.00 | $144,401.25 |
| Phase II (Orange) 3/12/2021 - 9/29/2023 | 90.75 | $595.00 | $53,996.25 |
| Phase III (Green) 10/13/2023 – Present | 127.50 | $635.00 | $80,962.50 |
| Costs and Expenses (Exhibit C) |  |  | $9,622.13 |
| Gronda Attorney Fees (Exhibit D) | 25.10 | $635.00 | $15,938.50 |
| Gronda Mileage Costs (Exhibit D) |  |  | $151.20 |
|  |  | Subtotal: | $305,071.83 |
|  |  | Credit from Prior Payments: | ($84,200.88) |
|  |  | Remaining Owed: | $220,870.95 |

(*Id.*)

The Fee Opponents opposed Freed's renewed motion for attorney's fees on several grounds. (*See* Resps., ECF Nos. 166, 167.)  First, they argued that Freed had overstated the number of hours his attorney had reasonably spent on the litigation. (*See* County Resp., ECF No. 166-1, PageID.2727-2731; State Resp., ECF No. 167, PageID.2813-2816.)  They also argued against awarding fees for specific billing entries that they said were excessive or unnecessary. (*See id.*)  They further argued against awarding fees for any work conducted after the *Freed I* judgment on February 26, 2021.  They contended that after that point, Freed's counsel spent time only on losing appellate arguments and fee litigation, and they insisted that that time was not "reasonably" spent. (*See id.*)

The Fee Opponents also challenged the hourly rate claimed by Freed's counsel.  They argued that the more appropriate (and much lower) rate was the median rate for attorneys in the Bay City/Midland/Saginaw areas of Michigan,

10

where Freed's attorney's office is located. (*See* County Resp., ECF No. 166-1, PageID.2731-2734; State Resp., ECF No. 167, PageID.2816-2820.)

Both Fee Opponents also argued that any fee award must be reduced to account for what they saw as Freed's limited degree of success. (*See* County Resp., ECF No. 166-1, PageID.2738; State Resp., ECF No. 167, PageID.2816.) They again argued that Freed had not obtained any additional success after February 26, 2021, and that his losing efforts after that time did not support an award of fees. (*See* County Resp., ECF No. 166-1, PageID.2737; State Resp., ECF No. 167, PageID.2818.) They also argued that the Court should reduce the requested fees to account for the fact that the amount of the request dwarfed Freed's actual recovery in the case – less than $42,000. (*See* County Resp., ECF No. 166-1, PageID.2738.)

Finally, the Fee Opponents argued that Freed should not recover the fees or costs associated with his unsuccessful appeals and the present fee dispute. (*See* County Resp., ECF No. 166-1, PageID.2739-2740; State Resp., ECF No. 167, PageID.2820-2821.)

## C

The Court referred Freed's renewed motion for attorney's fees to the assigned Magistrate Judge. On December 10, 2025, she issued the R&R in which she recommended that the Court grant Freed's renewed motion for attorney's fees in large part. (*See* R&R, ECF No. 172.) More specifically, the Magistrate Judge

11

recommended that the Court enter an award for fees and costs in the amount of $266,606.83. (*See id.*, PageID.2858.)  She noted that "$84,200.88 has already been paid toward [Freed's] attorney fees and costs, meaning $182,405.95 would be owed if this recommendation is adopted." (*Id.* at n.1, PageID.2858.)  She recommended that the Fee Opponents split the fees and costs 50-50. (*See id.*, PageID.2875-2876.)

The Magistrate Judge first addressed the Fee Opponents' contentions that Freed achieved only limited success and that he should not recover fees for time spent on discrete claims and appeals that were unsuccessful:

> The Undersigned suggests that this case falls into the category of "complex civil rights litigation involving numerous challenges to institutional practices or conditions," which requires additional caution. *Id.* at 436. Plaintiff brought related claims based on the same underlying facts. It would have been difficult if not impossible for counsel to break down his billing entries to account for granular details like the amount time spent briefing specific arguments on claims that are all closely related. Additionally, Plaintiff would not have achieved an excellent result (which he did), absent the establishment of subject-matter jurisdiction, which was at issue because Gratiot County and Thomas filed a motion to dismiss on that ground back in November 2017. (ECF No. 6). The Undersigned similarly does not find that Plaintiff's choice to litigate and appeal issues after liability was established—even though these efforts were ultimately unfruitful—was unreasonable nor that the hours spent working on these endeavors should go uncompensated. And to reiterate, the Supreme Court has cautioned against reducing a fee award in a complex civil rights case "simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id.* at 435.

12

(*Id.*, PageID.2869-2870 (quoting *Hensley*, 461 U.S. at 435–37).)

The Magistrate Judge then turned to the lodestar calculation.  Like Freed, she relied on the State Bar of Michigan's Economics of Law Reports to determine a reasonable market rate. (*See id.*, PageID.2870 (citing *Adcock-Ladd*, 277 F.3d at 350).)  And she concluded that because "this litigation [was] a complex civil rights case raising constitutional issues" (*id.*, PageID.2871), the appropriate rates for comparison (from the State Bar reports) were those charged by "civil rights" lawyers. (*Id.*)  But she disagreed slightly with the hourly rates that Freed claimed for Phases I and II of the litigation:

> Given counsel's fifteen years in practice and extensive work in state and federal courts at every level, the Undersigned finds it reasonable for counsel's hourly rate to be assessed using the highest two percentiles. (*See* ECF No. 162-3). When this case was first filed in 2017, counsel had around half the years of experience that he currently does. Thus, the Undersigned finds that the 75th percentile number provided in the 2017 report is his reasonable hourly rate for Phase I. Given counsel's additional years of experience and the case involving both trial and appellate work during Phase II, the Undersigned finds that the 95th percentile number provided in the 2020 report is his reasonable hourly rate for Phase II. For the same reasons, the Undersigned finds that the rate requested, which is less than 95th percentile number provided in the 2023 report, is his reasonable hourly rate for Phase III. In sum, counsel's reasonable hourly rates are as follows: Phase I – $400 ($125 less than requested), Phase II – $550 ($45 less), Phase III – $635 (as requested).

(*Id.*, PageID.2872-2873.)

13

The Magistrate Judge then found the number of hours Freed billed for the case to be "reasonable." (*Id.*, PageID.2873.)  She explained that the total amount of hours (less than 500 for Freed's counsel, plus around 25 hours for mediation co-counsel) was "far from excessive" for a case filed in 2017 that had gone to the Sixth Circuit three times. (*See id.*)  She also reviewed the specific hours and found them "to be sufficiently itemized, detailed, and devoid of any obvious overbilling." (*Id.*)  She therefore multiplied Freed's total requested hours by the new hourly rates for each phase to reach a lodestar of $240,895 for lead counsel and $15,938.50 for mediation co-counsel. (*See id.*, PageID.2874.)

The Magistrate Judge next rejected the Fee Opponents' contention that the lodestar amount should be reduced on the basis that Freed achieved only "limited success."  She drew upon the Supreme Court's statement in *Hensley* that complex civil rights cases often "cannot be viewed as a series of distinct claims" and that a "district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." (*Id.*, PageID.2874 (quoting *Hensley*, 461 U.S. at 435).)

Finally, the Magistrate Judge suggested that the Fee Opponents should each be required to pay 50% of the fees and costs awarded. (*See id.*, PageID.2875.)  She reasoned that the Fee Opponents were equally liable because "Michigan has heavily

14

participated in this lawsuit since 2018 when it intervened" and the lawsuit "was only necessary in the first place because of an unconstitutional state law." (*Id.*)

At the conclusion of the R&R, the Magistrate Judge notified the parties that they had 14 days to file objections to her recommendations. (*See id.*, PageID.2876.) Both Fee Opponents filed objections. (*See* Objs., ECF Nos. 173, 174.) Freed did not. The Court has carefully reviewed the objections and addresses them below.

## II

When a party objects to portions of a Magistrate Judge's report and recommendation, the Court reviews those portions *de novo*. *See* Fed. R. Civ. P. 72(b)(3); *Lyons v. Comm'r of Soc. Sec.*, 351 F.Supp.2d 659, 661 (E.D. Mich. 2004). The Court has no duty to conduct an independent review of the portions of the R&R to which the parties did not object. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985).

## III

Together, the Fee Opponents raise eight objections to the R&R. (*See* Objs., ECF Nos. 173, 174.) The objections overlap substantially, so the Court groups them into four "buckets," detailed below. For the reasons the Court will explain, the Court **SUSTAINS IN PART** and **OVERRULES IN PART** the Fee Opponents' objections.

15

**A**

Before turning to the specific objections, the Court begins with the background rules on awarding attorney's fees to a prevailing party.  The *Freed III* court explained the first step in that process as follows:

> In awarding attorneys' fees, the district court's first job is to determine the lodestar award: the reasonable number of hours expended multiplied by a reasonable hourly rate. *Binta B.*, 710 F.3d at 627. This is a fact-intensive task, and thus the court must identify the facts upon which it relies.
>
> The district court should "exclude from [its] initial fee calculation hours that were not 'reasonably expended.' " *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933 (quoting S. Rep. No. 94-1011, at 6 (1976)). To do so, the court may "identify specific hours that should be eliminated," *id.* at 436, 103 S.Ct. 1933, or it may rely on its "overall sense of a suit" and "use estimates" to calculate an attorney's time, *Fox*, 563 U.S. at 838, 131 S.Ct. 2205. Either way, it must explain "why the rejected hours were not reasonable." *Minor v. Comm'r of Soc. Sec.*, 826 F.3d 878, 884 (6th Cir. 2016) (emphasis added).

*Freed III*, 137 F.4th at 560–61.

When calculating the lodestar amount, "district courts 'ha[ve] broad discretion [to] determine a reasonable hourly rate,'" but a district court should "identify the salient features of its decision-making process." *Id.* at 561 (quoting *Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 715 (6th Cir. 2016)). "[U]seful guideline[s]" for identifying a reasonable hourly rate include the

16

prevailing market rates, awards in analogous cases, and the district court's own previous experience in handling fee requests. *Id.*

After determining the lodestar, "the district court can adjust the award based on litigation-specific considerations." *Id.* (citation omitted). "The most important factor at this stage is the extent to which the party seeking fees prevailed." *Id.* Where the prevailing party is only partially successful, a district court must address two questions:

> First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?
>
> In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit, even where the claims are brought against the same defendants . . . counsel's work on one claim will be unrelated to his work on another claim. Accordingly, work on an unsuccessful claim cannot be deemed to have been "expended in pursuit of the ultimate result achieved." *Davis v. County of Los Angeles*, 8 E.P.D. ¶ 9444, at 5049 (CD Cal. 1974). The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.

*Hensley*, 461 U.S. at 434–35. If, on the other hand, a litigant has "raise[d] alternative legal grounds for a desired outcome," then "the court's rejection of or failure to reach

17

certain grounds is not a sufficient reason for reducing a fee." *Id.* at 435.  In the end, "[t]he result is what matters." *Id.*

Finally, when apportioning fee liability, a "district court may find it necessary to further explain its decision in the context of 'the relative culpability of the parties, which of them was the focus of litigation, and, consequently, which party's efforts required a larger portion of the plaintiff's counsel time.'" *Freed III*, 137 F.4th at 563 (quoting *Avenue Grille*, 113 F.3d 1234, 1997 WL 219740, at *2).

## B

The Court now turns to the Fee Opponents' objections to the R&R.  The objections fall into four general lines of attack, and the Court addresses each in detail below.

## 1

First, the County objects to the R&R's recommended hourly rates.  It says that the "hourly rates recommended by the Magistrate Judge are excessive in relation to Freed's degree of success and his counsel's conduct of this litigation." (County Objs., ECF No. 173, PageID.2894.)  But the County fails to cite any authority for the proposition that the reasonable hourly rate to be used in the lodestar calculation should be determined by the degree of success obtained or the litigation decisions made by the attorney of record.  While those factors are relevant to the determination of the *ultimate fee award* – indeed, as noted above, it is well-settled that a fee request

18

may be reduced based upon a limited degree of success, *see, e.g.*, *Freed III*, 137 F.4th at 561 – those factors have no bearing on the selection of the reasonable hourly rate.  Instead, as explained above, district courts determine a "reasonable hourly rate" by assessing, among other things, the "prevailing market rate in the relevant community" – that is, "that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000).  Moreover, it is clear that district courts do not consider a plaintiff's "degree of success" until *after* deciding upon the appropriate hourly rate. *See Freed III*, 137 F.4th at 561–62 (explaining that a "district court's first job" is to calculate the lodestar award by determining "a reasonable hourly rate" and multiplying that rate by the "reasonable number of hours expended" and that "[a]fter determining the lodestar calculation, the district court can adjust the award" based upon, among other things, "the extent to which the party seeking fees prevailed").  For these reasons, the County's objection provides no basis for disturbing the R&R's recommended hourly rates.

The Court has independently reviewed the recommended rates and finds them to be reasonable.  In arriving at those rates, the Magistrate Judge properly considered the type of litigation (civil rights) and the venue (federal district court in Michigan) to identify the "relevant community" within which to compare hourly rates. (*See* R&R, ECF No. 172, PageID.2869-2872.)  She then cited "counsel's fifteen years in

19

practice and extensive work in state and federal courts at every level" to determine the prevailing market rate (75th- to 95th-percentile) for attorneys with skill and experience comparable to Freed's lawyer. (*Id.*, PageID.2872.)  This approach tracks the approach outlined in the case law.  In addition, Freed's counsel has appeared before this Court many times, and the Court's experience with counsel further persuades the Court that the recommended hourly rates for him are reasonable.  In the past five years, the Court has presided over several civil rights actions brought by Freed's counsel involving complex constitutional and statutory questions.  The legal work performed by Freed's counsel in those cases was of a very high quality. Based on the Court's familiarity with the work of Freed's counsel, the Court believes that he is within the upper echelon of the plaintiff's civil rights bar in Michigan and that he warrants a high hourly rate.  For all of these reasons, the Court agrees with the Magistrate Judge's determination that reasonable hourly rates for Freed's attorney are $400 for Phase I, $550 for Phase II, and $635 for Phase III.

## 2

### a

The next set of objections – which constitutes the bulk of the objections by the Fee Opponents – contend that Freed should not be awarded attorney's fees for most, if not all, of the legal work performed on this case after February 26, 2021. According to the Fee Opponents, that is the day on which Freed prevailed, and they

say that all of the legal work after that date was both unsuccessful, unnecessary, and insufficient to support a fee award.   More specifically, they highlight that on February 26, 2021, the then-presiding judge entered judgment in favor of Freed and awarded Freed the difference between the amount at which his home was sold at the foreclosure sale and the amount of his tax debt.   They note that despite his victory, Freed appealed to the Sixth Circuit and sought, among other things, even more relief. He argued to the Sixth Circuit that (1) he was entitled to the difference between the "fair market value" of his property and his tax debt and (2) the foreclosure of his property violated the Eighth Amendment (not just the Fifth Amendment, as the then-presiding judge had ruled).   The Fee Opponents stress that the Sixth Circuit squarely rejected both arguments – calling the first one "meritless" and concluding that the second "fare[d] no better." *Freed v. Thomas* ("*Freed II*"), 81 F.4th 655, 659 (6th Cir. 2023).   Simply put, the Fee Opponents identify February 26, 2021, as a clean break between Freed's success in the litigation, on one hand, and a period in which he unnecessarily prolonged the litigation by pressing unsuccessful claims on appeal[3], and they strongly oppose any award of fees for that they see as the unsuccessful

---

[3] The State concedes that Freed won on some discrete issues after February 26, 2021. It admits that he prevailed on "the County's *Monell* defense and the legal question whether the Department could bear fee-shifting liability." (State Objs., ECF No. 174, PageID.2915.)   But it characterizes the billing entries on those issues as "a small fraction of the claimed hours." (*Id.*)   In the end, the State proposes "[a]llow[ing] only narrowly documented post-February 2021 fees directly attributable to the successful *Monell* and fee-liability determinations." (*Id.*, PageID.2924.)

phases of the litigation. (*See generally* County Objs., ECF No. 173, PageID.2899-2900; State Objs., ECF No. 174, PageID.2909-29117, 2920-2924.) The Fee Opponents also stress that much of Freed's legal work after February 26, 2021, involved seeking attorney's fees, and they contend that he should not be permitted to recover legal fees for the large amount of time he spent seeking fees. (*See* County Objs., ECF No. 173, PageID.2900; State Objs., ECF No. 174, PageID.2915-2917.)

**b**

The Court agrees with the Fee Opponents in part. The Court shares their view that Freed should not be awarded fees for the time he spent after February 26, 2021, pressing on appeal the arguments that the Sixth Circuit rejected as "meritless" – *i.e.*, his claim for the difference between the fair market value of his residence and his tax debt and his contention that the foreclosure violated the Eighth Amendment. The Court views those arguments as conceptually distinct – and logically severable – from the claims on which Freed prevailed before taking the appeal. And since Freed was unsuccessful on those arguments, the Court deems it proper to subtract the time spent presenting these arguments on appeal – time that is reflected in Phase II – from his fee demand.

The Court recognizes that it is not strictly required to reduce the claimed fees on this basis, but the Court deems the reduction appropriate under the circumstances. These claimed fees are properly disallowed because, in the Court's view, they were

22

not "expended in pursuit of the ultimate result achieved." *Hensley*, 461 U.S. at 435

(quoting *Davis v. Cnty. of Los Angeles*, 8 E.P.D. ¶ 9444, at 5049 (C.D. Cal. 1974)).

Thus, the Court will subtract from Freed's fee request the fees claimed for the time

worked pressing his unsuccessful arguments on appeal.

The Court has carefully reviewed the billing records submitted by Freed's

attorney, and the Court cannot determine from those records the precise number of

hours spent advancing the losing arguments on appeal. The difficulty arises from

the fact that at the same time Freed was pressing his unsuccessful arguments on

appeal, he was defending against contentions that the County was pressing in an

appeal of its own, and he prevailed against the County on its affirmative

contentions.[4] The Court has not been able to discern from the billing records the

exact total of hours spent on appeal pressing the losing arguments as opposed to

defending against the County's appeal.

However, the Court has also reviewed the relevant filings, the docket entries,

and the Sixth Circuit's decision, and based upon its review of all of these sources,

the Court concludes that Freed's counsel spent approximately 75% of his time

---

[4] As noted above, in *Freed II*, Freed persuaded the Sixth Circuit to reject the County's argument that it could not be held liable under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). *See Freed II*, 81 F.4th at 661.

23

briefing and arguing the losing positions in *Freed II*.[5]  Accordingly, the Court concludes that a 75% reduction in hours spent in connection with the appeal from the February 26, 2021, judgment is appropriate.  Thus, the Court will reduce the hours spent on that appeal from 90.75 to 22.5.

The total fees requested in connection with that appeal – as reflected in Freed's Phase II fee demand – are $53,996.25.  The Magistrate Judge recommended reducing (to $550 per hour) the hourly rate used to calculate that request, Freed did not object to that reduction, and for the reasons explained in Section (III)(B)(1) above, the Court finds that reduced hourly rate reasonable.  Reducing the hours reasonably claimed for that appeal to 22.5 results in a fee award for Phase II of $12,375 ($550 per hour x 22.5 hours).

c

The Fee Opponents have not persuaded the Court that the Magistrate Judge erred when she approved the fees sought for work done after February 26, 2021, in pursuit of a fee award.  That work is reflected in Freed's Phase III fee demand of $80,962.50.

---

[5] For instance, roughly 75% of Freed's *Freed II* appeal briefs addressed the losing positions. *See* Appellant's Brief, *Freed v. Thomas*, No. 21-1248, 2021 WL 1132292 (6th Cir. Mar. 15, 2021); Appellant's Third Brief, *Freed v. Thomas*, Nos. 21-1248, 21-1288, 2022 WL 821461 (6th Cir. Mar. 9, 2022).)

The Fee Opponents object that the Court should not award fees for that work because it was neither reasonably necessary nor successful. The Court disagrees on both scores.

As an initial matter, the time in Phase III spent seeking fees at the district court level – before the then-presiding judge – was both reasonably necessary and largely successful. It was reasonably necessary because in order to seek the fees to which Freed was entitled as the prevailing party, Freed's counsel had to prepare and file a fee request and defend against the Fee Opponents' opposition to the request. And the time Freed's counsel spent doing that work was reasonable. The Court has reviewed his billing entries for that work and finds the hours spent to be appropriate for the tasks performed. Moreover, that work was largely successful because the then-presiding judge entered a substantial fee award in Freed's favor – albeit one that was reduced by 35% from Freed's demand.

The Court likewise concludes that the time spent litigating the fee dispute on appeal on Phase III was reasonably necessary and sufficiently successful as to warrant a fee award. Taking an appeal from the then-presiding judge's fee award, as Freed did, was reasonably necessary because, as the Sixth Circuit made clear, the order awarding the fees – and reducing Freed's fee request by 35% – lacked sufficient analysis. Thus, it was entirely appropriate for Freed to challenge the award on appeal. It was likewise reasonably necessary for Freed to defend against the Fee

25

Opponents' own appeal from the then-presiding judge's fee award.  He certainly could not be expected to sit idly by as the Fee Opponents urged the Sixth Circuit to reduce the fee award even further.  Furthermore, the work on appeal achieved an important measure of success: it got Freed out from under a 35% reduction in his fee demand.  And while it is true that the result did not guarantee Freed an increased award on remand, the Court nonetheless deems it a meaningful level of success. Moreover, during the appeal in Phase III, Freed prevailed on his argument that the State could be held liable for attorney's fees and costs under 42 U.S.C. § 1988(b). *See Freed III*, 137 F.4th at 558–60.  Finally, the Court has reviewed the hours spent litigating the fee dispute on appeal, and the Court concludes that those hours are reasonable for the tasks performed.

Finally, the Fee Opponents err to the extent that they argue the Court should not award fees for the Phase III work because that work "related solely to those attorney fees themselves (and Freed's appeal to increase them), not enhancement of Freed's own success in the litigation." (County Objs., ECF No. 173, PageID.2897-2898; *see also* State Objs., ECF No. 174, PageID.2911.)  It is well-established that a prevailing plaintiff like Freed may recover fees for legal work seeking a fee recovery. *See, e.g.*, *Sakhawati v. Lynch*, 839 F.3d 476, 478, 480–81 (6th Cir. 2017) (awarding fees for hours spent preparing fee application and responding to opposition to application).  Like other attorney's fees, those fees may be awarded so

26

long as they are reasonable – as the Court has concluded the fees sought for Phase III are. *See Husted*, 831 F.3d at 722–25.

**d**

In sum, the Court finds that (1) the hourly rates suggested by the Magistrate Judge for all three phases are reasonable, (2) the hours approved by the Magistrate Judge for Phase I and Phase III are reasonable, and (3) the hours approved by the Magistrate Judge for Phase II should be reduced by 75%.  The Court's final fee award of fees and costs thus breaks down as follows:

| PHASE | APPROVED HOURLY RATE | APPROVED HOURS WORKED | APPROVED FEES | APPROVED COSTS | TOTAL AWARD |
|---|---|---|---|---|---|
| Phase I | $400 | 275.05 | $110,020 | $2989.55 | $113,009.55 |
| Phase II | $550 | 22.5 | $12,375 | $1010.00 | $13,385.00 |
| Phase III | $635 | 127.50 | $80,962.50 | $5622.58 | $86,585.08 |
| Gronda | $635 | 25.10 | $15,938.50 | $151.20 | $16,089.70 |
| **Total** | | | | | **$229,069.33** |

**3**

Next, the State objects to the Magistrate Judge's recommendation that the Court split the responsibility for paying the award evenly between it and the County. (*See* State Objs., ECF No. 174, PageID.2917-2920.)  The State argues that that division does not account for its "limited role" as an intervenor in the litigation and

27

the respective amount of time Freed's attorney spent on the litigation due to the State's intervention. (*Id.*, PageID.2919.)  The Court agrees for several reasons.

First, the State was not involved in the case until October 2, 2018, about a year after Freed filed his initial Complaint. (*See* Mot. to Intervene, ECF No. 55.) Prior to that date, Freed's attorney had already billed approximately 100 hours on the litigation. (*See* Billing Entries, ECF No. 162-4, PageID.2554-2555.)  That represents roughly 25% of the total hours that the Court has deemed reasonably spent on this litigation.  The State should not be held responsible for hours worked before it entered the case.

Second, even after the State intervened, the County and its legal positions remained the "focus of the litigation." *Freed III*, 137 F.4th at 563 (quoting *Avenue Grille, Inc.*, 113 F.3d 1234, 1997 WL 219740, at *2).  Indeed, Freed appeared to spend more time responding to arguments made by the County than he spent on arguments made by the State. (*See* Appellant's Third Brief, *Freed v. Thomas*, No. 18-2312, 2019 WL 1779666 (6th Cir. Apr. 15, 2019) (dedicating approximately twenty-five pages to the County's arguments and six pages to the State's arguments); Appellant's Third Brief, *Freed v. Thomas*, Nos. 21-1248, 21-1288, 2022 WL 821461 (6th Cir. Mar. 9, 2022) (dedicating approximately twelve pages to the County's arguments as compared to six pages to arguments made by the State).  The briefing

28

indicates that the County's "efforts required a larger portion of the plaintiff's counsel time." *Freed III*, 137 F.4th at 563.

Finally, the "relative culpability" of the County and the State is not equal. *Id.* The County's culpability is substantially higher.  Indeed, it was the County, not the State, that foreclosed on Freed's property and wrongfully retained the excess proceeds from the foreclosure sale.  And the County's decision to do that was "voluntary." *Freed II*, 81 F.4th at 661 (quoting Mich. Comp. Laws § 211.78(6)). Because the County's voluntary misconduct was the genesis of the litigation, it is appropriate to require the County to pay more than 50% of the fees and costs awarded.

For all of these reasons, the Court concludes that the County should pay 75% of the fees and costs awarded and that the State should pay 25% of those fees and costs.  The breakdown is as follows: the County's total liability for fees and costs is $171,802.00 and the State's total liability is $57,267.33.  The County's remaining obligation is $91,811.16, which reflects the fact that the County has already paid $79,990.84 in fees and costs; and the State's remaining liability is $53,057.29, which reflects the fact that the State has already paid $4,210.04 in fees and costs.[6]

---

[6] The Court has credited each of the Fee Opponents for attorney's fees already paid. The Court arrived at those amounts as follows.  First, as Freed acknowledged in his renewed motion for attorney's fees and costs, $84,200.88 has already been paid toward attorney's fees and costs. (*See* Mot., ECF No. 162, PageID.2544.)  The County says it has paid $79,990.84 (which is 95% of $84,200.88). (*See* County

**4**

Finally, the County objects that "the Magistrate Judge fail[ed] to expressly recommend that the prior payment by [the] County be credited toward any new fee award." (County Objs., ECF No. 173, PageID.2901.)  The County says that after the district court's initial award of attorney's fees in 2024, it paid $79,990.84 (its 95% share) to Freed's attorney. (*See id.*)  The Court **OVERRULES** this objection.  The Magistrate Judge did expressly note that $84,200.88 had already been paid toward Freed's attorney's fees and costs and should be credited toward any new award. (*See* R&R at n.1, ECF No. 172, PageID.2858.)  And, as noted immediately above, the Court has credited both of the Fee Opponents for amounts they have already paid.

**IV**

For all of the reasons explained above, **IT IS HEREBY ORDERED** as follows:

(1) The Fee Opponents' objections to the R&R (ECF Nos. 173, 174) are **OVERRULED IN PART** and **SUSTAINED IN PART**;

(2) The recommended disposition of the R&R (ECF No. 172) is **ADOPTED IN PART**;

---

Objs., ECF No. 173, PageID.2901.)  The Court assumes the remaining amount ($4,210.04, or 5%) must have been paid by the State.  These respective amounts paid are consistent with the then-presiding judge's calculations in his initial order granting attorney's fees. (*See* Order Granting in Part and Denying in Part Plaintiff's Motion for an Award of Attorney Fees and Costs, ECF No. 133, PageID.2125.)

(3) Freed's Renewed Motion for Attorney Fees and Costs (ECF No. 162) is

**GRANTED IN PART** and **DENIED IN PART**.   Freed is awarded

$229,069.33 in attorney's fees and costs.  Gratiot County shall pay 75% of the

total and the State of Michigan shall pay 25% of the total.  When each of the

Fee Opponents is given credit for amounts already paid, their remaining

obligations for fees and costs are as follows: the County owes $91,811.16 and

the State of Michigan owes $53,057.29;

(4) Given the Court's decision above, Freed's Motion to Expedite Decision on

Owed Attorney Fees and Costs (ECF No. 169) and Freed's Motion for Ruling

on Pending Objections to the Magistrate Judge's R&R (ECF No. 178) are

**TERMINATED AS MOOT**.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  March 20, 2026

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 20, 2026, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126

31